**UNITED STATES of America, Appellee,**

v.

**John A. ROBINSON, Appellant.**

**No. 91–3664.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1992.

Decided Jan. 26, 1993.

Nathalie C. Elliott, Kansas City, MO, argued, for appellant.

D. Michael Green, Asst. U.S. Atty., Kansas City, MO, for appellee.

Before LOKEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSENBAUM,[*] District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

John Robinson entered a conditional plea of guilty to conspiring to distribute cocaine and possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. He appeals the district court's[1] denial of his motion to suppress evidence seized during a search of his luggage at the Amtrack train station. We affirm.

## I. BACKGROUND

On the morning of November 30, 1990, Robinson arrived at the Kansas City Amtrack station on the 7:15 a.m. train from Los Angeles. Kansas City, Missouri police detectives Pat Sola and Randolph Hopkins were on drug interdiction duty at the Amtrack station and watched the passengers of the Los Angeles train disembark and enter the lobby. Detective Sola saw Robinson enter the lobby carrying a gray bag and a floral bag. Robinson walked twice around the lobby, stopped to make a phone call at a pay phone that he had walked by earlier, and entered the men's restroom. After Robinson had been in the restroom for at least five minutes, Detective Hopkins entered the restroom and heard Robinson say that he was on his way to St. Louis. Hopkins told Sola what he had observed and Sola waited for Robinson to exit the restroom. Approximately ten minutes later Robinson left the restroom, looked around the lobby several times and sat down in a lobby chair, placing the floral bag under his seat and the gray bag at his feet. Sola approached Robinson and asked if he could talk to him. Robinson agreed and Sola showed Robinson his badge and sat in the chair next to him. Sola told Robinson that he regularly talked to Amtrack passengers and again asked if Robinson had the time to talk to him. Robinson agreed. Sola then asked to see Robinson's ticket, which was a one-way ticket from Los Angeles to St. Louis in the name of John Jones. The connecting train was scheduled to depart at 9:15 a.m.

When Sola asked Robinson for identification, Sola noticed that Robinson appeared very nervous and seemed to have difficulty swallowing. Robinson was unable to locate any identification and stated that his name was John Robinson and he lived in Lynwood, California. When asked whom he was going to visit in St. Louis, he said he was visiting his favorite aunt. At this point Sola asked if he could search Robinson's luggage for narcotics, to which Robinson answered "No." Sola then told Robinson that he would order a narcotics-trained canine to sniff his luggage. Robinson said that he "did not want a dog" and told Sola to go ahead and look in the luggage. Sola told Robinson that he did not have to give permission to search the bags but Robinson said that Sola could search the bags.

Sola began searching the floral bag and discovered a heavy gift-wrapped package with no card attached. He asked Robinson who the gift was for and he replied that it was for his aunt but he did not know what it contained because his mother had wrapped the package. Sola asked Robinson if he could open the package and Rob-

[*] The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri. Judge Stevens has since become Chief Judge of the Western District of Missouri.

inson replied "okay." Sola discovered a Purex box that appeared to have an excessive amount of glue on the box top. Sola asked if he could open the Purex box to check for narcotics and Robinson said he could. When Sola opened the box, he discovered a clear plastic bag containing a substance that appeared to be cocaine. Sola placed Robinson under arrest and read Robinson his *Miranda*[2] rights.

Robinson was charged in a two-count indictment with conspiracy to possess with intent to distribute cocaine and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841 and 846. Robinson filed a motion to suppress the cocaine found in his bag. After an evidentiary hearing, the magistrate judge[3] recommended that the motion to suppress be denied because the encounter between Robinson and Sola was consensual and the cocaine was not a product of an illegal detention. The district court adopted the magistrate judge's recommendation and denied Robinson's motion to suppress the evidence. Robinson entered a conditional plea of guilty, expressly reserving his right to appeal the denial of his motion to suppress the evidence.

## II. DISCUSSION

On appeal, Robinson contends that the district court erred in denying his motion to suppress because any evidence obtained by law enforcement officials was the product of an illegal detention. He contends the encounter with Detectives Sola and Hopkins was not consensual and the officers lacked reasonable and articulable suspicion to justify his detention in the Amtrack terminal. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Robinson also contends the illegal seizure tainted the subsequent search of his luggage and the seized evidence must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The government argues the entire

encounter was consensual and Robinson was not seized within the meaning of the Fourth Amendment.

■ The initial encounter between Robinson and Detective Sola was clearly consensual. The meeting took place in a public area. Officer Sola was not in uniform, nor did he display a weapon or show any force. Detective Sola identified himself as a police officer and asked if he could speak to Robinson; Robinson replied "yes." Sola then asked Robinson where he was going, asked to see his train ticket, and asked for identification. Robinson agreed to answer Detective Sola's questions, which did not implicate the Fourth Amendment merely because Sola was a law enforcement officer. *Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion), the Supreme Court explained that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Id.* at 497, 103 S.Ct. at 1324.

■ Robinson argues that even if the initial encounter was consensual, it escalated into an investigative stop when he refused to allow Sola to search his luggage. "We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick,* —— U.S. at —— 111 S.Ct. at 2389. "So long as a reasonable person would feel free 'to disregard the police and go about

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The Honorable John T. Maughmer, United States Chief Magistrate Judge for the Western District of Missouri.

his business,' the encounter is consensual and no reasonable suspicion is required." *Id.* at —, 111 S.Ct. at 2386. (citation omitted). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* The district court found that there was no evidence that the situation immediately preceding Robinson's arrest was anything more than a consensual encounter. We review the district court's findings of fact for clear error and review de novo whether a seizure occurred. *United States v. McKines*, 933 F.2d 1412, 1420, 1424 (8th Cir.) (en banc) (J. Gibson, J., concurring specially, joined by Lay, C.J. and Judges Fagg, Loken, Magill, McMillian and Arnold), *cert. denied*, — U.S. —, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991). During the questioning, the police detectives did not display their weapons or threaten to arrest Robinson. The police detectives did not use physical force or show of authority to detain Robinson in the terminal. Detective Sola began questioning Robinson around 7:30 a.m. and his train was not scheduled to depart until 9:15 a.m.; by his own actions, Robinson was detained in the terminal for over an hour and a half. Under the facts of this case, the district court was not clearly erroneous in finding that the continued questioning was a consensual encounter that did not constitute a *Terry* stop.

▮ Finally, Robinson argues that his consent to search the luggage was involuntary. There is conflicting testimony concerning the events that took place immediately before Sola searched Robinson's luggage. Detective Sola stated that once he told Robinson he would order a canine, Robinson responded that he "did not want a dog" and told Sola to go ahead and search the luggage. Robinson stated that Sola left the area, made a phone call and then told Robinson it would be 30 to 40 minutes before the dog would arrive. Robinson contends the officer's statement that the dog would take 30 to 40 minutes coerced him into consenting to the search because he might have missed his train waiting for the dog to arrive. Whether consent is voluntarily given is a "question of fact to be determined from all the circumstances." *Schneckloth v. Busta-monte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). Unlike the defendant in *United States v. Place*, the order of a dog sniff did not amount to an effective seizure because Robinson was not subjected to the possible disruption of his travel plans in order to remain with his luggage. *Place*, 462 U.S. 696, 708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983). Robinson was not coerced into consenting by any action of the law enforcement officials; he was not forced to chose between waiting for his luggage while a dog was summoned and continuing on his way because his travel plans required him to wait in the terminal for over an hour. Just as a statement by a law enforcement official that he will attempt to obtain a search warrant does not automatically vitiate an otherwise consensual search, *United States v. Dennis*, 625 F.2d 782, 793 (8th Cir.1980), Detective Sola's statement that he was going to order a canine sniff does not automatically vitiate Robinson's consent. "[Robinson's] knowledge that a dog sniff and resulting search would inevitably prove incriminating does not mean his consent was involuntary and coerced." *United States v. Hawthorne*, 982 F.2d 1186, 1191 (8th Cir.1992).

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

ROSENBAUM, District Judge, dissenting.

When the narcotics officers asked for Mr. Robinson's consent to search his luggage, the response was an unequivocal "No." At the moment Mr. Robinson answered "No," something happened. Even guilty of possessing contraband, as he has been shown to be, he stood against the power of the State. When Mr. Robinson made his denial, he invoked the protections of the Fourth Amendment. As William Pitt said over 200 years ago:

The poorest man may in his cottage bid defiance to all the forces of the Crown.

It may be frail—its roof may shake—the wind may blow through it—the storm may enter—the rain may enter—but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!

The totality of the circumstances gave the investigators the right to detain Robinson's luggage. *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *United States v. Weaver,* 966 F.2d 391, 394 (8th Cir.1992). But, it is not at all clear that they had the right to detain Mr. Robinson himself as an inducement to a "voluntary" consent for a search.

It can be argued that the defendant was not detained, being merely told it would take 30–40 minutes to obtain a drug sniff-dog. In the abstract, Mr. Robinson was "at liberty to ignore the police presence and go about his business." *Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991) (*quoting Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)). But confronted with two police officers and the impending arrival of a sniff-dog, how is he to know this? The implicit detention was inherently coercive.

I cannot find consent to search here. I dissent.