**UNITED STATES of America, Appellant,**

**v.**

**Angela JONES also known as Simila Butler, Appellee.**

**No. 92–2088.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided April 5, 1993.

Rehearing and Rehearing En Banc Denied May 26, 1993.

Kathleen A. Felton, Dept. of Justice, Washington, DC, argued (Eugene Harrison, Asst. U.S. Atty., Kansas City, MO, on the brief) for appellant.

Charles E. Atwell, Kansas City, MO, argued (Jacqueline Cook, Kansas City, MO, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

The Government appeals the district court's order suppressing evidence police officers seized from Angela Jones's train luggage. The district court concluded Jones's consent to a dog-sniff search of the luggage was involuntary. Because we conclude the officers had reasonable suspicion to justify detaining the luggage for a dog-sniff regardless of Jones's consent, we reverse and remand.

Jones paid cash for a one-way Amtrak train ticket from Los Angeles to Indianapolis in the name of S. Butler. Jones traveled in a sleeper compartment with her suitcase and small travel bag. When the train stopped in Albuquerque, a Drug Enforcement Administration (DEA) agent knocked on Jones's door, identified himself, and asked to see Jones's ticket and identification. Jones showed her ticket to the agent, but said she had no identification. The agent asked Jones if she would consent to a search of her luggage. Jones said no and the agent left. After the train departed, the agent discovered that the home telephone number Jones listed on her Amtrak itinerary was incorrect. The agent then called a police officer in Kansas City, the train's next destination, and reported that he suspected Jones was carrying drugs based on these facts.

Acting on the call, Kansas City police detectives James Sola and Charles Scudder, dressed in plain clothes, boarded the train when it arrived in Kansas City at 7:20 a.m. Sola knocked on Jones's compartment door while Scudder remained ten to fifteen feet down the aisle by the train's exit. After Jones opened the door, Sola identified himself and Jones agreed to speak with him. Jones could see the reflection of Scudder in the door's window. Sola asked to see Jones's ticket and identification. Appearing visibly nervous, Jones produced her ticket and told Sola she had no identification. Sola asked Jones where she lived and although Jones responded, "in Indianapolis," she gave Sola an address in Dayton,

Ohio. When Sola pointed this out, Jones stated that she used to live in Dayton and her husband now lives in Indianapolis, but she did not know the address. Sola then asked if Jones would consent to a search of her luggage. Jones refused, stating her luggage had already been searched in Albuquerque. Sola knew this was untrue based on the Albuquerque agent's information.

The parties dispute what happened next. Sola testified he asked Jones if she would consent to a dog sniff of her luggage and she answered yes. Jones testified she consented to a dog sniff only after Sola told her that she and her luggage would be detained until he got a search warrant. Both parties agree that after Jones consented, Sola removed Jones's luggage to a common luggage area where a drug-sniffing dog was waiting. After the dog alerted to Jones's luggage, indicating the luggage contained drugs, Sola informed Jones that he would detain the luggage to obtain a search warrant. Jones then consented to a warrantless search. The detectives found ten kilogram-sized packages of cocaine in her luggage.

The Government charged Jones with possession with intent to distribute cocaine. *See* 21 U.S.C. § 841(a)(1) (1988). Jones moved to suppress the cocaine seized from her luggage. After a hearing, the magistrate judge concluded that the detectives' encounter with Jones was consensual and Jones's consent to a dog-sniff search of her luggage was voluntary. Thus, the magistrate judge recommended denying Jones's motion. The district court, however, held an additional hearing and concluded that Jones's consent to the dog-sniff search was involuntary. Because Sola and Scudder testified they believed they lacked reasonable suspicion to detain the luggage without consent, the district court concluded the seizure could not be upheld under the Fourth Amendment and suppressed the cocaine. We review de novo whether the detectives violated the Fourth Amendment in detaining the luggage. *See United States v. Hawthorne*, 982 F.2d 1186, 1189 (8th Cir.1992).

The Government contends the district court improperly suppressed the cocaine because the detectives had reasonable suspicion to justify briefly detaining Jones's luggage for a dog sniff without her consent. We agree. Police officers may briefly detain luggage for a dog-sniff search without violating the Fourth Amendment if the owner of the luggage consents, *see United States v. McKines*, 933 F.2d 1412, 1423 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991), or if there is reasonable suspicion supported by articulable, objective facts that the luggage contains drugs, *United States v. Riley*, 927 F.2d 1045, 1047–48 (8th Cir.1991); *see United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). We decide whether reasonable suspicion existed based on the totality of the circumstances. *Hawthorne*, 982 F.2d at 1189 (quoting *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir. 1988)).

Here, the record contains sufficient objective facts to support a reasonable suspicion that Jones's luggage contained drugs. Before Jones arrived in Kansas City, the Albuquerque agent informed the detectives that Jones had departed from a source city for drugs, was traveling with a one-way ticket purchased with cash, carried her bags with her, had no identification, and supplied an incorrect home phone number on her train itinerary. This information, along with Jones's nervous appearance and the deceptive answers she provided to Sola in Kansas City, is enough to arouse reasonable suspicion. *See Riley*, 927 F.2d at 1049 (officers can rely on information supplied by other officers to form reasonable suspicion); *Hawthorne*, 982 F.2d at 1189–90 (reasonable suspicion existed to search defendant's bag based on departure from drug-source city, one-way cash ticket, no checked luggage, no identification, nervousness, and other behavior); *United States v. Pantazis*, 816 F.2d 361, 363–64 (8th Cir.1987) (defendant's deceptive answers coupled with suspicious actions pro-

vided reasonable suspicion to search defendant's bag).

Jones contends that even if the facts support reasonable suspicion, we cannot now justify the detention of the luggage on this ground because Sola and Scudder did not believe they had reasonable suspicion when they detained the luggage. We disagree. Because we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not limited by the detaining officer's subjective opinions. *See Klingler v. United States,* 409 F.2d 299, 304 (8th Cir.), *cert. denied,* 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States v. McKie,* 951 F.2d 399, 402 (D.C.Cir.1991) (per curiam). Thus, our conclusion that reasonable suspicion existed justifies Sola and Scudder's detention of the luggage regardless of the detectives' beliefs.

Jones also contends that Sola and Scudder seized her in violation of the Fourth Amendment when the detectives first encountered her in the train compartment. If the detectives illegally seized Jones, the evidence seized from her luggage should be suppressed because Jones's deceptive answers during the encounter provided the reasonable suspicion to justify the detention of the luggage. *See United States v. Bloom,* 975 F.2d 1447, 1458–59 (10th Cir. 1992) (defendant's incriminating statements were tainted fruit of illegal seizure of defendant's person). We review de novo whether a seizure occurred. *McKines,* 933 F.2d at 1426.

For purposes of the Fourth Amendment, a person is seized when officers restrain a person's liberty through physical force or a show of authority. *Florida v. Bostick,* — U.S. —, —, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). The Fourth Amendment is not implicated, however, when officers merely approach and question a person, as long as the encounter is consensual in nature and does not involve coercion or restraint of liberty. *Id.; United States v. Dennis,* 933 F.2d 671, 673 (8th Cir.1991) (per curiam). Even without a basis to suspect a person, officers may ask to see the person's identification

and request consent to search the person's luggage if the officers do not convey a message that the person must comply. *United States v. Todd,* 963 F.2d 207, 210 (8th Cir.1992). A seizure occurs if, based on all the circumstances of the encounter, a reasonable person would not feel "free to decline the officers' requests or otherwise terminate the encounter." *United States v. Wright,* 971 F.2d 176, 179 (8th Cir.1992); *see Bostick,* — U.S. at —, —, 111 S.Ct. at 2388, 2389 (reasonable person test presumes an innocent person).

In this case, there is nothing to suggest Sola and Scudder restrained Jones during the encounter in the train compartment. Jones opened her door and agreed to talk to Sola. The detectives were not wearing uniforms, did not display their weapons, and did not touch Jones. Contrary to Jones's assertion, it is not significant that the encounter occurred in the confined area of a train compartment. Rather than evidence of police coercion, the detectives' positions in the train aisle were compelled by the location of the interview. *See United States v. Tavolacci,* 895 F.2d 1423, 1425 (D.C.Cir.1990); *United States v. Savage,* 889 F.2d 1113, 1116–17 (D.C.Cir. 1989); *see also Bostick,* — U.S. at —, 111 S.Ct. at 2387 (defendant's confinement was natural result of riding on bus, not necessarily police conduct). Jones could have ended the encounter by shutting the door, *see Tavolacci,* 895 F.2d at 1425, and indeed, Jones testified she was free to close the door at all times. Jones was aware she could end the encounter because she had successfully ended the earlier encounter with the agent in Albuquerque. Because a reasonable person in Jones's position would feel free to refuse to answer Sola's questions or to end the encounter in the train compartment, we conclude the detectives did not seize Jones within the meaning of the Fourth Amendment. *See United States v. Robinson,* 984 F.2d 911, 913–14 (8th Cir.1993); *Wright,* 971 F.2d at 179–80; *Dennis,* 933 F.2d at 673.

In sum, on the basis of the detectives' consensual encounter with Jones and the information supplied by the Albuquerque

agent, reasonable suspicion existed to justify detaining Jones's luggage for a dog-sniff search absent Jones's voluntary consent. Thus, we reverse the district court's order suppressing the cocaine seized from Jones's luggage and remand for further proceedings.