No. 96-3398

Ernest Conrod, Jr.,                    *
                                       *
      Appellee,                        *
                                       *
      v.                               *    Appeal from the United States
                                       *    District Court for the
Roger Davis,                           *    Eastern District of Missouri
                                       *
      Appellant.                       *

Submitted: March 10, 1997

Filed: July 17, 1997

Before McMILLIAN, Circuit Judge, HANSEN, Circuit Judge, and
MAGNUSON,* District Judge.

MAGNUSON, District Judge.

This action brought, pursuant to 42 U.S.C. § 1983, arises out of the arrest and search of Appellee Ernest Conrad ("Conrad") by Appellant Roger Davis ("Davis"), a Missouri State Highway Patrolman. The case previously was tried before a jury, with Conrad representing himself pro se. The jury returned a verdict in favor of Davis. During the trial, the district court denied Davis's Motion for Verdict as a Matter of Law. This Court later reversed the jury's verdict based on Conrad's lack of counsel and remanded the case for a new trial. Based on the testimony presented at the first trial, Davis moved for summary judgment, arguing that he was entitled to qualified immunity and that Conrad was estopped from raising

_____

      * The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

his claims again in federal court.  The district court denied
Davis's motion on the grounds that the

court's previous denial of the Motion for Verdict as a Matter of Law was the law of the case and denied the motion. Davis appeals the decision of the district court. We reverse and enter judgment in favor of Appellant.

I

Appellant Davis is a corporal in the Missouri State Highway Patrol. On the evening of December 24, 1988, Davis was working on Interstate 88 in Scott County, Missouri. Using his radar, Davis detected Conrad driving seventy-six miles per hour in a sixty-five mile per hour zone. Conrad was driving a Corvette with Mississippi license plates. The parties dispute whether Conrad was traveling with his stepfather as a passenger. According to trial testimony, each local judge in Missouri sets the policy for when bond must be accepted for speeding tickets. The Scott County judge had set a policy that drivers from out of state who are stopped for speeding must post bond. Davis was not authorized to accept bond because those duties rested exclusively with the local sheriff. Knowing that Conrad would have to post bond, Davis arrested Conrad for his speeding violation. Arrest is authorized for the offense of speeding in Missouri.

Davis contends that he asked Conrad for permission to search the vehicle and that Conrad consented. Conrad maintains that he refused permission. Davis then searched Conrad and the vehicle. At the first trial, Davis testified that Conrad had a bulge in his right front pants pocket. A search of Conrad

3

revealed $6,050 in cash.  In searching the vehicle, Davis found $4,000 in cash in a wicker briefcase.  Davis asked Conrad where he got the money.  According to Davis, Conrad told him that the money was rent money he collected for his uncle in St. Louis for six rental properties

4

in Mississippi.[2]

Conrad's mother was also traveling with Conrad but drove in a separate vehicle. Conrad's mother stopped her vehicle by Conrad's when she realized that Conrad had been stopped. Upon observing the stopped vehicle, Davis approached Conrad's mother and asked her about Conrad's uncle. According to Davis, Conrad's mother told Davis that Conrad's uncle did not own any property in Mississippi.[3]

According to Davis, he asked Conrad to drive his vehicle to the sheriff's office. Conrad contends that Davis handcuffed him and placed him in his squad car and that his stepfather drove Conrad's vehicle to the sheriff's office. While somewhat unclear from the parties' submissions, it appears that Davis retained custody of Conrad's possessions, including the money, during the trip to the sheriff's office.

Once at the sheriff's office, Conrad's vehicle was driven to a car wash to get out of the rain. Davis asked Officer Greg Kenley to have a drug-sniffing dog search the interior of Conrad's car. The dog found no contraband in the car. The officers then had the dog sniff the money. According to Davis,

---

[2] Conrad testified at trial that he received the money from rental property he owned and through the sale of a van. He testified that he intended to lend the money to his uncle.

[3] At trial, Conrad's mother testified that Conrad's uncle did own five houses in Mississippi and that Conrad did not own any property.

he placed the money in an envelope and placed the envelope in a small room used for the test.  Davis testified at trial that Kenley told him that the dog "alerted" to the money indicating the presence of drugs.  Conrad contends that he, along with his mother and stepfather, were in the room for the dog test and that the dog had no reaction to the money.  Davis testified that Kenley conducted the canine test

pursuant to police policy and that no one else was in the room with the dog.

Davis gave Conrad a ticket for speeding and a receipt for the money taken from him.  Conrad later paid the speeding ticket.  Davis turned the money over to the Drug Enforcement Agency ("DEA") who later successfully initiated forfeiture proceedings.

This case originally went to trial in February 1994, resulting in a jury verdict for Davis.  We reversed the verdict because the district court had not appointed counsel for Conrad.  On remand, Davis moved the district court for summary judgment.  Relying on the prior trial testimony, Davis contended that he was entitled to qualified immunity and that Conrad was collaterally estopped from bringing his claims.  The district court denied Davis's motion, believing that its previous denial of a Motion for a Verdict as a Matter of Law during the first trial precluded it from granting Davis's motion.  Davis appeals the decision of the district court and contends that he is entitled to summary judgment on two grounds: (1) that he is entitled to qualified immunity; and (2) that Conrad is collaterally estopped from bringing his claims.

## II

Conrad does not address the district court's decision regarding the law of the case doctrine, apparently conceding the appropriateness of review of that decision.  The doctrine

7

of the "law of the case" is a discretionary tool permitting a district court to effectively manage the legal issues arising during litigation.  See Copeland v. Merrill Lynch & Co., 47 F.3d 1415, 1424 (5th Cir. 1995).  It does not deprive the district court of the ability to reconsider earlier rulings.  See id.  Where the district court believes that an earlier decision was reached in error, it may revisit the decision "to avoid later reversal."

<u>Lovett v. General Motors Corp.</u>, 975 F.2d 518, 522 (8th Cir. 1992) (citation omitted). To the extent that the district court believed that it lacked the authority to review its earlier decision, such a belief was erroneous.

However, even if the "law of the case" doctrine had precluded the district court from considering the merits of Davis's motion, we have the authority to review the denial of that motion. As the Seventh Circuit has held, "[l]aw of the case . . . does not block a superior court from examining the correctness of an earlier decision." <u>Avitia v. Metropolitan Club of Chicago, Inc.</u>, 924 F.2d 689, 690 (7th Cir. 1991). The Supreme Court has made it clear that a decision denying qualified immunity is appealable prior to the commencement of trial. <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985); <u>Wright v. South Ark. Regional Health Center, Inc.</u>, 800 F.2d 199 (8th Cir. 1986) (reversing district court's denial of summary judgment on appeal brought before commencement of trial). Therefore, we shall address the merits of Davis's appeal.

**II**

This Court reviews <u>de novo</u> a lower court's denial of summary judgment. <u>See</u> <u>Hardin v. Hussman Corp.</u>, 45 F.3d 262, 264 (8th Cir. 1995). The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show

9

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is warranted where a party fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has extended this immunity to state police officers, see Malley v. Briggs, 475 U.S. 335 (1986), and it provides protection "to all but the plainly incompetent or those who knowingly violate the law." Id.

Once a defense of qualified immunity is raised, a plaintiff must offer "particularized" allegations of unconstitutional or illegal conduct. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. The official is not required to guess the direction of future legal decisions, see Mitchell v. Forsyth, 472 U.S. 511, 535 (1985), but must rely on preexisting case law for guidance. See Coffman v. Trickey, 884 F.2d 1057, 1063 (8th Cir. 1989). Whether any individual will be held liable for official actions "turns on the 'objective legal reasonableness' of the action." Id. (citing Harlow, 457 U.S. at 819).

Conrad argues that the circumstances of his arrest and the search of his vehicle and person were such that immunity is not available to Davis. First, Conrad contends that Davis's actions in arresting Conrad were questionable. Conrad suggests that Davis's decision to arrest Conrad was possibly race-

11

related because speeding is a misdemeanor crime in Missouri and because under cross-examination by Conrad during his initial trial in federal court, Davis admitted that he did not recall following a similar course of action with a non-minority driver. However, Conrad does not explicitly argue that the stop and arrest were illegal or unconstitutional, nor does he provide any other evidence to suggest that the stop and arrest were pretextual or illegal.

Furthermore, even if Conrad presented evidence that Davis's stated reasons for stopping Conrad were pretextual, such evidence would not invalidate the stop and arrest. Conrad does not dispute the fact that he was speeding. As the Supreme Court recently held in Whren v. United States, 116 S.Ct. 1769, 1774 (1996), a police officer's subjective intent is not relevant for purposes of determining whether a traffic stop was objectively reasonable under the Fourth Amendment. We have previously held that "any traffic violation, even a minor one, gives an officer probable cause to stop the violator. If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Caldwell, 97 F.3d 1063, 1067 (8th Cir. 1996) (citing Whren, 116 S. Ct. at 1774).

Conrad has not presented any evidence that his arrest was inappropriate or unconstitutional. Trial testimony demonstrated that Conrad was arrested pursuant to state law and local policy regarding the posting of bond. By paying his speeding ticket, Conrad admitted that he violated the law. Conrad's bald assertions of racist motivations on the part of Davis do not render his conduct unconstitutional. The Supreme Court rejected "the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of the law has occurred." Whren, 116 S. Ct. at 1773. Davis's conduct in arresting Conrad was reasonable and appropriate.

Regardless of whether Conrad gave his consent for the

13

search, Davis had the authority to search Conrad and his vehicle pursuant to Conrad's lawful arrest. See New York v. Belton, 453 U.S. 454, 460-61 (1981). Davis did not need probable cause to believe another crime was being committed in order to search Conrad or his vehicle.

> The authority to search the person incident
> to a lawful custodial arrest, while based
> upon

> the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

United States v. Robinson, 414 U.S. 218, 235 (1973).

Conrad argues that even if Davis was justified in arresting him and searching his vehicle, Davis was not authorized to hold his money and subject it to a canine sniff. While it is somewhat unclear as to the exact point in time at which Davis was to have "seized" Conrad's money,[4] it is clear that Davis had assumed control over the money for purposes of the canine sniff. Conrad argues that there is nothing illegal about carrying cash and that nothing else would have given Davis sufficient cause to detain Conrad's money for further testing. Conrad cites to Davis's trial testimony and argues that Davis did not suspect Conrad of fitting a drug courier profile and did not discover any other weapons or contraband which would have justified a seizure.

Pursuant to the lawful arrest, Davis had legal control over both Conrad and his possessions. This case is unlike the cases cited by Conrad. Each of the cited cases focuses on

---

[4] It was disputed at trial whether Davis gave Conrad his money to hold while they traveled to the sheriff's office or kept it with him in the squad car.

15

whether circumstances would justify an initial investigative stop and search.  <u>See</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 7-9 (finding reasonable suspicion to support investigatory stop where defendant paid for $2,100 airline ticket in cash from roll of $20 bills, did not check his luggage, and agents reasonably believed defendant was

traveling under an alias); United States v. Weaver, 966 F.2d 391, 394 (8th Cir. 1992)(finding reasonable suspicion for stop where, among other things, defendant was on flight from known drug source city, wore gang-like apparel, acted nervous, and did not have identification); United States v. White, 890 F.2d 1413, 1417(8th Cir. 1989) (finding insufficient evidence to support reasonable suspicion for stop where defendant bought airline ticket with cash, arrived on flight known to be used by narcotics traffickers, and acted nervous and suspicious in the airport).  In United States v. O'Neal, 17 F.3d 239 (8th Cir. 1994), we found that the clothing and nervous appearance of the young people detained by police did not provide sufficient justification to stop them and search their bags. Id. at 241-242.  Here, Conrad had already been legitimately stopped and arrested for speeding.

However, the circumstances of this case also indicate that Davis had a reasonable suspicion that the funds were the product of illegal drug activity.  As we stated in United States v. Jones,

> Police officers may briefly detain luggage for a dog-sniff search without violating the Fourth Amendment . . . if there is reasonable suspicion supported by articuable, objective facts that the luggage contains drugs. . . . We decide whether reasonable suspicion existed based on the totality of the circumstances.

990 F.2d 405, 407 (8th Cir. 1993).  Conrad carried over $6,000 in small denominations in his front pants pocket and $4,000 in a wicker briefcase in the automobile.  Testimony at trial

17

indicated that Davis had received training in drug interdiction and that he knew that drug couriers often carry large amounts of cash in small denominations.  Davis also knew that couriers often carry their drugs along with cash.  When asked about the money, Conrad stated that it was from rental property owned by his uncle.  Conrad's mother contradicted Conrad, denying that Conrad's uncle owned any

such rental property.[5]  While there may have been a logical explanation for these unusual circumstances, these are not "innocent, non-suspicion-raising details."  Weaver, 966 F.2d at 396.  Given that Davis had already stopped Conrad for violating traffic laws, it was reasonable for Davis to subject the money already legally in Davis's possession to a canine sniff.  In addition, there does not appear to have been any significant delay in having the drug dog test the money.  The test was conducted as soon as Conrad was brought to the sheriff's office and the car moved to a dry location.  See White, 42 F.2d at 460 (finding that a delay of one hour and twenty minutes for arrival of drug dogs was not unreasonable).

Conrad argues that Davis did not believe that Conrad fit a drug courier profile.  Conrad contends that there was no evidence at trial that Davis relied on his past drug interdiction training or other sorts of reliable indicia that would suggest drug activity.  Without such evidence, Conrad argues that there was no objective basis for believing that Conrad was involved with drugs and therefore, that the seizure of Conrad's money was unconstitutional.  As we stated in United States v. Jones, "[b]ecause we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not limited by the detaining officer's subjective opinions."  990 F.2d at 408. Regardless of Davis's subjective opinions, we find that there was an objective basis for Davis's

---

[5] While the trial testimony of both Conrad and his mother conflicted with Davis's version of these stories, Conrad's explanation for the money was still in conflict with that of his mother.

reasonable suspicion.

# IV

We have recently stated that a "judicial determination that . . . seized property was connected with a drug transaction" is not necessary before transferring property to the DEA for forfeiture proceedings. <u>Madewell v. Downs</u>, 68 F.3d 1030, 1043 (8th Cir. 1995). While not explicitly challenged in this appeal, Conrad suggests that the drug dog did not "alert" to the money taken from him and therefore, that there was insufficient evidence to support a transfer of the money to the DEA.

Conrad does not argue with the proposition that a positive canine test for drugs would establish probable cause for seizing property and transferring it to the DEA. Instead, Conrad argued at trial and continues to suggest in this appeal, that the drug dog did not "alert" to the money. Conrad does not, however, challenge Davis's assertion that Officer Kenley told him that the dog had alerted to the money. Based on information told to him by a fellow officer, it was reasonable for Davis to believe that the money was tainted by drugs and should be transferred to the DEA for forfeiture proceedings.

# V

Appellant Davis stopped Appellee Conrad for violating state traffic laws. In accordance with state and local law, Davis arrested Conrad and conducted a search pursuant to that arrest. Based on the circumstances of Conrad's stop and the inconsistent answers to Davis's questions, Davis had

21

reasonable suspicion that the money discovered as part of the search was involved in illegal drug activity. Davis did not violate Conrad's constitutional rights by subjecting the money taken from him to a canine sniff. Once Officer Kenley told Davis that the drug dog had alerted to the money, Davis acted appropriately in transferring the funds to the

DEA for forfeiture proceedings.  Davis's actions were reasonable and he is therefore entitled to qualified immunity for the stop, arrest, and search of Appellee Conrad.

Because we hold that Davis is entitled to qualified immunity, the Court does not address Davis's contention that Conrad is collaterally estopped from bringing his claims.  The judgment of the district court is reversed.  The case is remanded to the district court with directions that judgment be entered for the defendant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT