GREGORY, Circuit Judge,
dissenting:
The issue is whether Officer Loconti had a “reasonable suspicion” to stop McCoy. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), provides police officers with a limited exception to the warrant and probable cause requirements of the Fourth Amendment when there is reasonable suspicion supported by articulable facts that criminal activity is afoot — not a general warrant to hunt out the “nefarious in the mundane” based on hunches, intuition, or stereotypes. Id. at 30, 88 S.Ct. 1868; see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Viewing innocuous facts through the lens of Officer Loconti’s “seasoned perspective,” see Maj. Op. 414, the majority opinion exploits subjective experience to trump an otherwise absence of reasonable suspicion. Today’s holding renders law enforcement — not the courts — the sole arbiter of what qualifies as reasonable suspicion. By failing to recognize that Officer Loconti (who dwells not “in the pages of fiction where reality is bounded only by the imagination,” Maj. Op. 415) is restricted by words (the United States Constitution) far more riveting than those found in any novel, the majority obliterates the Fourth Amendment’s protections. Thus, I respectfully dissent.
The test for reasonable suspicion is objective. See Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The subjective beliefs of any one officer — even a “seasoned officer” — does not and cannot overcome the objective, *417 reasonable, and articulable factual inferences drawn by a court. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (stating that “a reviewing court should take care both to review findings of historical fact for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers”) (emphasis added).[1] While the majority criticizes the district court’s decision to focus on what did not happen, a careful reading of what did occur reveals only two individuals having a conversation in broad daylight, following each other from one public location to another, and continuing their conversation.
Unlike the hundreds of Terry stops we have affirmed, McCoy did nothing more than communicate and associate in a public place. The district court correctly found that: (1) McCoy’s actions occurred in broad daylight in public grocery store parking lots during business hours; (2) the grocery store parking lots were not high-crime areas; (3) Officer Loconti did not hear McCoy’s conversation with the tow truck driver; (4) Officer Loconti did not witness McCoy make any furtive movements, including any hand-to-hand transaction with the tow-truck driver; and (5) McCoy did not try to avoid Officer Loconti or flee the scene.[2] (J.A. 325, 327.); cf. United States v. Lender, 985 F.2d 151, 154 (4th Cir.1993) (noting that when officers tried to approach the suspect, he evaded them by turning his back and walking away); United States v. Mayo, 361 F.3d 802 (4th Cir.2004) (finding the defendant’s unusual nervousness and the appearance of something heavy in his pocket were articulable bases for reasonable suspicion); United States v. Perkins, 363 F.3d 317 (4th Cir.2004) (finding reasonable suspicion where suspect fits description of informant tip). The district court concluded, in light of these factors, that Officer Loconti’s observations were insufficient to form reasonable suspicion. I agree. Taking an objective view of Officer Loconti’s observations, as we must, McCoy’s conduct does not eliminate a substantial portion of innocent ordinary activity. United States v. Brugal, 209 F.3d 353, 361 (en banc) (plurality opinion); see also United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir.1997) (noting that suspicious behavior may give an officer the impression that a narcotics transaction is occurring, but more is needed to qualify for reasonable suspicion). Yet the majority’s holding is so broad that it encompasses such seemingly innocent and ordinary behavior.
The fact that drug deals previously occurred in both parking lots is inconsequential. As our Circuit has explained, an officer spotting a person in a high crime area does not provide independent or freestanding grounds for reasonable suspicion. Sprinkle, 106 F.3d at 617 (citing Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 *418 L.Ed.2d 357 (1979)). To consider the illegal propensities of an area as an independent corroborating factor in the reasonable suspicion analysis “would, in effect, hold[ ] a suspect accountable for factors wholly outside of his control.” United States v. Perrin, 45 F.3d 869, 873 (4th Cir.1995). Likewise, to find reasonable suspicion based on Officer Loconti’s reflexive profile of drug transactions in Loudoun County, Virginia, would upend constitutional requirements. Even when a defendant is a known drug dealer, we have held that more is required to create reasonable suspicion. Sprinkle, 106 F.3d at 617 (citing United States v. Davis, 94 F.3d 1465, 1469 (10th Cir.1996)). We have, here, only two unknown individuals conversing and following each other from one grocery store parking lot to another.
Law enforcement officers are suspicious by training, but the broad reach of their suspicion is constrained by the Court’s objective analysis of reasonableness. By justifying the existence of both suspicion and reasonableness solely on Officer Loconti’s “seasoned perspective,” the majority abdicates that role. Officer Loconti’s subjective opinion may very well be that McCoy’s behavior was indicative of a drug deal. Frankly, however, the law is clear that Officer Loconti’s subjective opinion — without more — cannot objectively support reasonable suspicion. See United States v. Jones, 990 F.2d 405, 408 (8th Cir.1993) (“Because we decide whether reasonable suspicion justifies a detention based on all the objective facts, we are not limited by the detaining officer’s subjective opinions.”). The facts known to him at the time of McCoy’s seizure, viewed in a light most favorable to McCoy, reflect no more than an “inchoate and unparticularized suspicion or hunch.” Terry, 392 U.S. at 27, 88 S.Ct. 1868. A “hunch” is not reasonable suspicion and, therefore, cannot justify a search under the Fourth Amendment. Officer Loconti had nothing more than a hunch, to which the majority m error gives dispositive weight.
While constitutional interpretation is not an exact science, it is certainly not left solely, as the maj'ority does here, to law enforcement’s subjective opinions. Beauty very well may be “in the eye of the beholder,” to use the majority’s words, but one’s constitutional rights are not left to such whim. The district court rightly understood this important distinction. Because the majority does not, and — in the process — diminishes the rights of all citizens “to be secure in their persons,” U.S. Const, amend. IV, I must respectfully dissent.

. To be clear, I do not suggest that the district court's determination of reasonable suspicion is not subject to de novo review. Rather, I believe that the majority, while taking into account inferences drawn by Officer Loconti, fails to give due weight to the inferences drawn by the district court in determining that reasonable suspicion did not exist.

. Although the district court found that the tow truck driver fled "at a high rate of speed,” this fact does not bolster the majority's position. Officer Loconti testified that when he called out to McCoy and indicated that he wanted to talk; McCoy stopped. (J.A. 82.) Further, Officer Loconti testified that he believed he witnessed a drug deal and stopped McCoy before whistling to the tow truck driver. (J.A. 81, 82.) Thus, to impute the tow truck driver’s evasive behavior to McCoy would be particularly disconcerting because McCoy took no evasive action when summoned by Officer Loconti and was already stopped prior to the tow truck driver fleeing.