**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 96-3876 and 97-1529
_____

| | | |
|---|---|---|
| Henry E. Parrish; Yvonne L. Parrish, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa |
| Donald Mallinger; Richard Larkin; | * | |
| Crispus Nix, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: September 12, 1997
Filed: January 7, 1998

_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Iowa inmate Henry Parrish and his wife Yvonne brought this damage action under 42 U.S.C. § 1983 against three prison officials for seizing funds that came into Parrish's inmate account to satisfy his obligations under the Iowa Victim Restitution Act, Iowa Code ch. 910. The district court[1] initially granted summary judgment to one defendant, Richard Larkin, but granted Henry Parrish partial summary judgment against

---

[1]THE HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa.

the other two, Crispus Nix and Donald Mallinger, concluding they had violated Parrish's due process rights and were not entitled to qualified immunity. Nix and Mallinger appealed the qualified immunity ruling, and we remanded for further consideration in light of two intervening decisions of the Supreme Court of Iowa, Walters v. Grossheim, 525 N.W.2d 830 (Iowa 1994), and State v. Van Hoff, 528 N.W.2d 99 (Iowa 1995). On remand, the district court granted Nix and Mallinger qualified immunity on Henry's claims, and dismissed Yvonne's claims when she failed to respond to defendants' motion for summary judgment. The Parrishes appeal. After reviewing the grant of summary judgment *de novo*, see Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992), we affirm.

Iowa requires nearly all convicted offenders to pay restitution to crime victims and the State. See Iowa Code § 910.2 (1990).[2] The sentencing court determines the amount of restitution, the persons to whom it must be paid, and any public service that must be performed as restitution. See § 910.3. An offender committed to prison "shall make restitution while placed at that facility." § 910.5(1). The Department of Corrections must establish a restitution payment plan, taking into account the offender's income, family circumstances, and other individualized factors. See §§ 910.4, 910.5(1). Prison officials may deduct up to fifty percent of an inmate's prison earnings and allowances for restitution payments. See Iowa Admin. Code § 201-20.11(7) (1991). Restitution may also be deducted "from a credit to an inmate's account from an outside source by written authorization from the inmate, approval from the warden/superintendent, or by court order." Iowa Admin. Code § 201-20.11(10). An inmate may at any time petition the sentencing court "on any matter related to the plan of restitution or restitution plan of payment." § 910.7; see State v. Van Hoff, 415 N.W.2d 647, 649 (Iowa 1988).

_____

[2]The Victim Restitution Act has been significantly amended since the April 1991 events in question. See generally Mahers v. Halford, 76 F.3d 951, 952-54 (8th Cir. 1996), cert. denied, 117 S. Ct. 696 (1997). Unless otherwise noted, references in this opinion will be to statutes in effect in April 1991.

Prior to April 1991, the Iowa State Penitentiary, where Henry Parrish was incarcerated, published to inmates a Policy & Procedure Statement adopting the above-referenced restitution payment standards. On April 12, 1991, the Linn County District Court issued three restitution orders establishing Parrish's total restitution obligation at $1106.97. Later that month, Parrish received $650 from his mother. Parrish deposited the money in his inmate account and requested that $456 be paid to his wife. On April 23, Warden Nix approved Parrish's restitution payment plan, which provided that "[p]ayments will consist of 20 percent of my institutional allowance." Also on April 23, Warden Nix approved a staff recommendation that the $650 from Parrish's mother be applied to his restitution obligation. On April 25, the prison issued a $456 check to Yvonne Parrish. The next day, Mallinger, the prison Business Manager, learned that Warden Nix had previously approved applying the entire $650 against Parrish's restitution debt. Mallinger directed a subordinate to contact the payor bank and stop payment on the $456 check. Yvonne had already cashed the check, but she returned the money when the bank threatened criminal prosecution. Parrish later received two more checks from his mother totaling $70.

The Parrishes then commenced this action, alleging that defendants "confiscate[d] Plaintiff Henry's monies . . . in violation of the Due Process Clause of the Fourteenth Amendment," and seeking $570,000 in compensatory and punitive damages. Their damage claims center on a nervous breakdown, loss of employment, and involuntary mental health commitment that Yvonne Parrish allegedly suffered as a result of this episode. Defendants have held the $720 from Parrish's mother in a special account pending the outcome of this litigation.

Defendants concede, as they must, that Parrish has a property interest in the money his mother sent him that is protected by the Due Process Clause of the Fourteenth Amendment. See Mahers v. Halford, 76 F.3d at 954. But the Due Process Clause will support many types of § 1983 claims. See Zinermon v. Burch, 494 U.S. 113, 125-26 (1990). Although his brief ignores the distinction, it is apparent that Henry

Parrish presents two very different due process claims. The first is a substantive attack on defendants' authority to take money that came into his inmate account from a source outside the prison and apply that money to satisfy his admittedly valid restitution debt. The second is a procedural attack, alleging that more process was due before the money could be taken and applied in this fashion. The two claims are analytically distinct. Accordingly, we discuss each in turn.

**A.** In arguing that Warden Nix lacked substantive authority to take his money, Parrish relies on our decision in Sell v. Parratt, 548 F.2d 753 (8th Cir.), cert. denied, 434 U.S. 873 (1977). In Sell, two inmates possessed cash in violation of prison regulations. Prison officials confiscated the cash and paid it into an Inmates Welfare Fund for the benefit of all inmates. Though the confiscation was proper under the prison policy prohibiting inmates from possessing cash, we held that the inmates' due process rights were violated when they were permanently deprived of the cash because "an administrative agency has no right *without underlying statutory authority* to prescribe and enforce forfeitures of property as punitive measures for violations of administrative rules and regulations." 548 F.2d at 759 (emphasis added).

Relying on Sell, the district court initially granted partial summary judgment in Parrish's favor on the ground that neither the Iowa Victim Restitution Act nor § 201-20.11(10) of the Iowa Administrative Code permitted this taking of an inmate's money from an outside source. In Walters and Van Hoff, the Iowa Supreme Court subsequently decided that the statutes do authorize such action. Thus, we remanded because these decisions confirm there was no due process constraint on Warden Nix's *substantive* authority under § 201-20.11(10) of the Administrative Code to approve paying money Parrish received from an outside source to satisfy his court-ordered restitution debt. Legislation authorizing the paying of an inmate's restitution debt out of his prison account "is reasonably related to a legitimate governmental purpose" and therefore satisfies the modern, highly deferential substantive due process standard.

Honeywell, Inc. v. Minnesota Life & Health Ins. Guar. Ass'n, 110 F.3d 547, 554 (8th Cir.) (en banc), cert. denied, 118 S. Ct. 156 (1997).

Seeking to revive this issue, Parrish argues on appeal that the sentencing court ordered him to pay restitution in accordance with his restitution payment plan, that the plan only authorized deductions of twenty percent of his prison allowance, and that his property interest includes enforcing this limitation in the plan. In other words, Parrish contends that Warden Nix's authority under § 201-20.11(10) could only be exercised constitutionally through a payment plan. However, this is nothing more than an assertion that defendants acted contrary to state law, and "something more than a violation of state law must be claimed to establish a substantive due process violation." Weimer v. Amen, 870 F.2d 1400, 1406 (8th Cir. 1989). Moreover, a violation of state law does not deprive an official of qualified immunity, unless the violation itself gives rise to a § 1983 cause of action. See Swenson v. Trickey, 995 F.2d 132, 135 (8th Cir.), cert. denied, 510 U.S. 999 (1993); Bartlett v. Fisher, 972 F.2d 911, 915 (8th Cir. 1992).

**B.** That brings us to the more complex question whether Nix and Mallinger are entitled to qualified immunity on Parrish's claim that he was denied procedural due process. A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures. This inquiry examines "the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon, 494 U.S. at 126. Relevant factors include the affected private interest, the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the government's interest, including burdens that additional safeguards would entail. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In most cases, some type of predeprivation notice and hearing are constitutionally required before a property interest is invaded, but in some situations meaningful postdeprivation remedies are constitutionally sufficient. Compare Zinermon, 494 U.S. at 136-39, and Logan v.

Zimmerman Brush Co., 455 U.S. 422, 436 (1982), with Hudson v. Palmer, 468 U.S. 517 (1984), and Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

In this case, the State clearly provided an adequate postdeprivation remedy because Parrish could have petitioned the sentencing court to review these deductions under Iowa Code § 910.7. Indeed, such a petition may be filed predeprivation. Parrish argues that more process was due -- that defendants were constitutionally required to provide predeprivation notice and some form of hearing before taking $720 from his account to satisfy his restitution debt. Limiting the inquiry in this fashion puts the Mathews v. Eldridge factors in rather nice balance. On the one hand, the private interest at stake is not particularly strong because, though Parrish was deprived of the immediate use of the money, he received the benefit of having it applied to satisfy a restitution debt that would otherwise survive incarceration. See Beeks v. Hundley, 34 F.3d 658, 661 (8th Cir. 1994). Moreover, as we emphasized in Mahers v. Halford, 76 F.3d at 955-56, Parrish received significant predeprivation process -- a hearing in the sentencing court before the amount of restitution was established, plus notice of his individual payment plan and the prison's deduction policies. Finally, the State has strong interests in compensating victims, teaching inmates responsibility, and maintaining administrative control over its prisons. For these reasons, in Mahers v. Halford we rejected a procedural due process challenge to automatic twenty percent deductions under an Iowa Department of Corrections policy first adopted in 1992.

On the other side of the Mathews v. Eldridge scale, giving inmates a limited, informal predeprivation opportunity to contest particular deductions can be made administratively feasible and is consistent with the statutory directive that restitution must reflect individualized factors bearing on an inmate's ability to pay. See Iowa Code §§ 910.4, 910.5(1). These factors led the Iowa Supreme Court to conclude that predeprivation notice and a brief opportunity to object are required. See Walters, 525

N.W.2d at 833. That decision was later adopted by the Iowa Legislature and incorporated into a 1995 statute, Iowa Code § 904.702.

Parrish argues that this case is factually different than Mahers v. Halford and urges us to conclude that he had a clearly established right to predeprivation notice and hearing when Nix and Mallinger implemented their decision to apply the funds to Parrish's restitution debt. We reject this contention. The issue here is qualified immunity, a doctrine designed to protect from damage liability "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity shields prison officials from damage liability unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a broad constitutional right such as due process is "clearly established" for qualified immunity purposes is a particularized inquiry:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted). Subsequent developments are relevant in determining what law was "clearly established" at the time defendants acted. See Offet v. Solem, 936 F.2d 363, 367 (8th Cir. 1991). In our view, the subsequent actions of the Iowa Supreme Court and the Iowa Legislature to clarify state law, and our subsequent decision in Mahers v. Halford, make it clear that the extent to which Parrish was entitled to predeprivation notice and hearing was far from clearly established in April 1991. Accordingly, we agree with the district court that Nix and Mallinger are entitled to qualified immunity from Henry Parrish's damage claims.

After the court dismissed Henry Parrish's claims, defendants moved to dismiss Yvonne Parrish's claims. She defaulted on that motion, despite the fact that the district court granted her request for an extension of time to respond. The district court granted summary judgment dismissing her claims for this reason. That was not an abuse of the court's considerable discretion.

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.