# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2782

_____

Robert Mems; Nathanial Khaliq;     *
James Logan; Phillip Webb;     *
Thurman Smith; Byron Brown,     *
    *
Appellants,     *
    *   Appeal from the United States
v.     *   District Court for the
    *   District of Minnesota.
City of St. Paul, Department of     *
Fire and Safety Services,     *
    *
Appellee.     *

_____

Submitted:  June 14, 2000

Filed:  August 3, 2000

_____

Before MURPHY, HEANEY and MAGILL, Circuit Judges.

_____

HEANEY, Circuit Judge.

Robert Mems, Nathanial Khaliq, Thurman Smith, Byron Brown, James Logan, and Phillip Webb (collectively "Appellants") sued the St. Paul Fire Department ("SPFD"), alleging violations Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§2000e - 2000e-17 (2000) and the Minnesota Human Rights Act (MHRA), Minn. Stat. §363.03, subd. 1(2)(c) (2000). Appellants claim violations under both

disparate treatment and disparate impact theories. The district court granted summary judgment in SPFD's favor on both claims, and Appellants appeal. For the reasons stated below, we affirm in part and reverse in part.

## FACTS

In 1992, Brown, Mems, Khaliq, and Smith sued the SPFD for racial discrimination. The parties settled two years later, and as part of the settlement agreement, the SPFD was released from all claims arising before June 17, 1994.

In 1996, the same four plaintiffs, joined by Webb and Logan, brought another action the SPFD for racial discrimination. Pursuant to the settlement agreement, the initial four plaintiffs only sought relief for SPFD conduct occurring after June 17, 1994, whereas Webb and Logan allege discrimination since 1988.

SPFD moved for summary judgment on both claims. The district court granted the motion, concluding that the Appellants failed to allege conduct sufficiently severe or pervasive to create a hostile working environment and that they failed to present sufficient evidence that the SPFD's promotion examinations had a racially disparate impact. Appellants appeal.

## DISCUSSION

We review the district court's decision to grant summary judgment de novo. See Fed. R. Civ. P. 56(c). Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. See id. The movant bears the burden of proving that the facts are undisputed. See Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, summary judgment seldom should be granted in discrimination cases because such

cases often depend on inferences rather than direct evidence. See Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

Although the Appellants sue under both Title VII and the MHRA, we look to Title VII case law to analyze both claims. See Hanenburg v. Principal Mut. Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997); Sigurdson v. Isanti County, 386 N.W.2d 715, 719 (Minn. 1986).

## I. DISPARATE TREATMENT CLAIM

Title VII prohibits "discriminatory harassment so severe or pervasive as to alter the conditions of employment and create a hostile working environment." Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998)). An employer creates a hostile work environment if: (1) the employee is a member of a protected group; (2) the employee is subjected to unwelcome harassment; (3) a causal nexus exists between the employee's membership in the protected group and the harassment; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. See id.

The Appellants offer the following evidence in support of their disparate treatment claim. Brown, Mems, Khaliq, and Webb worked the B-Shift at the SPFD, which is the shift that often followed the A-Shift. They state that in retaliation for the 1994 settlement agreement with SPFD, A-Shift employees left windows open in the winter, turned the heat on high or low, misplaced kitchen items, and began inspecting the station for dust at shift change. Further, they testified that the SPFD directed all B-Shift employees to leave the station promptly at 8:00 a.m. each morning, while no other employees were required to leave immediately following their shifts.

In addition, they testified that magazines with racially-offensive cartoons were left at the station and that a photograph of two white firefighters with their middle fingers extended and a note next to it stating "this is our position on the whole thing" was attached to the bulletin board. They also claim that an antique chest being restored by an African-American firefighter was defaced with a hangman and noose. Finally, they claim that a basketball hoop used by B-shift members was torn down.

The Appellants further testified individually to certain discriminatory actions. Mems and Brown stated that they were required to respond to all emergency calls wearing full turnout gear, while white firefighters were not. Mems also testified that his protective gear and fire truck were tampered with, jeopardizing his safety and possibly delaying the emergency-response time. Khaliq stated that two magazines he left at the station were defaced, and that on at least one occasion his work break was restricted.

Webb testified that prior practice with another firefighter was to relieve each other of duty, prior to actual shift change, upon arrival at the station. Without informing Webb, the other firefighter stopped doing so, almost causing Webb to miss several fire runs. The City of Saint Paul Department of Human Rights investigated the incident and found probable cause that the firefighter's actions were in retaliation for a reprimand given to another firefighter or for the 1994 settlement.

Smith stated that a firefighter wrongly accused him of being intoxicated on duty. He also claims that a false report of cocaine possession was filed against him, causing police to search his locker. Finally, he claims that a white firefighter was cited for driving a Medic Rig while under the influence and another required cardiac monitoring because of cocaine use, but neither was ever searched nor disciplined. Logan also testified that racial slurs were used against him and that he was denied work positions because of racial animus.

Based on this evidence, a jury could find that the alleged conduct was sufficiently severe or pervasive to create a hostile work environment. It is undisputed that Appellants are members of a protected class, and they have produced evidence of unwelcome harassment based on their race, which affected their employment.

SPFD argues that there are many plausible, non-racial explanations for the actions alleged by the Appellants. SPFD essentially invites us to make credibility determinations and to draw inferences in its favor which we will not do. First, credibility determinations fall within the fact finder's purview, not ours. Second, when reviewing the district court's summary judgment grant, we must view the evidence in the light most favorable to the Appellants, not SPFD.

SPFD further argues that whenever faced with a complaint of racially offensive behavior, it investigated and promptly took remedial action. Although the evidence shows that SPFD often investigated complaints and that specific behavior was seldom repeated, the evidence also shows that racially offensive behavior continued in other forms. Therefore, whether the SPFD's remedial actions were effective is a jury question. See Carter, 173 F.3d at 229.

Genuine issues of material fact exist with regard to the Appellants' disparate treatment claim. Therefore, the district court erred by granting summary judgment.

## III. DISPARATE IMPACT CLAIM

The Appellants argue that SPFD's written examination had a racially disparate impact. Passing the written portion of the examination is a prerequisite to being considered for a promotion to captain in the SPFD. For the four testing years Appellants complain of, white applicants had a higher pass rate than black applicants.

Disparate impact claims under Title VII challenge "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993). To establish a prima facie case for disparate impact, the plaintiff must show: (1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988).

Unfortunately, the statistical record in this case is not fully developed. The evidence shows that there are approximately four hundred uniformed personnel in the SPFD, but it is not broken down by race. Moreover, although we know that very few African-Americans hold high ranking positions such as Captains and Fire Equipment Operators, the record does not reveal any precise numbers. Thus, we cannot comment on whether SPFD's promotional practices have had a general disparate impact on African-Americans.

Rather, this case is narrowly based on whether the written portion of the Captain examination disparately impacted African-Americans. The Appellants intended to prove with statistical evidence that the test had a disparate impact. When statistical evidence is offered to show causation, the evidence must be "of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id.

Expert witnesses for both sides agreed that the examination results violated the Four-Fifths Rule. The Four-Fifths Rule is used to determine whether an employment practice has an adverse impact. Under the Rule, if members of a protected class are selected at a rate of less than four-fifths (or eighty percent) of the most selected group, the selection rate is evidence of a disparate impact. However, even where the Four-Fifths Rule is violated, differences in the selection rates may not constitute an adverse

impact where the sample size is too small to be statistically significant.  See 29 C.F.R. §1607.6(D) (2000).

Although white firefighters passed the written examination in greater numbers than African-Americans, the sample size ranged from three to seven. Both the Appellants' and SPFD's expert witnesses agreed that the sample size was too small to be statistically significant. We agree. See Lewis v. Aerospace Community Credit Union, 114 F.3d 745, 750 (8th Cir. 1997) (finding sample size of three too small to be significant); Shutt v. Sandoz Crop Protection Corp., 944 F.2d 1431, 1433 (9th Cir. 1991) (stating group of eleven is too small to establish a statistical pattern).

The Appellants attempt to overcome this small sample size by combining all minorities and comparing their exam results to that of white firefighters, thus yielding a larger sample size than if African-Americans were viewed alone. This methodology would be appropriate if we were looking at the examination's impact on all minorities, but we are not. See Lewis, 114 F.3d at 750 (stating plaintiff must "demonstrate a disparate impact upon the group to which he or she belongs").

We recognize that a similar grouping methodology was permitted in Kohn v. City of Minneapolis Fire Department, 583 N.W. 2d 7 (Minn. Ct. App. 1998). In Kohn, the court permitted the grouping of all minorities to determine if the fire department promotion rate had a disparate impact on Hispanics. See id. at 14. However, unlike this case, the plaintiff in Kohn offered evidence that the test had the same impact on other minorities as it did on Hispanics, making the grouping of all minorities probative of the impact on Hispanics. See id. Kohn further offered evidence in support of the grouping methodology, such as the discriminatory history of the fire department. See id.

The Appellants in this case have not produced evidence that the other minorities they seek to group together with African-Americans were similarly situated or similarly affected by the examination, nor did the district court make such a finding. Also,

Appellants have not produced evidence of a discriminatory history of the SPFD's promotional examinations. Hence, grouping all minorities together for the purpose of determining the examination's impact on African-Americans is improper.

Because the Appellants have not produced statistically-significant evidence that African-Americans were disparately impacted by the SPFD's promotional examination, we affirm the district court's grant of summary judgment.[1]

## CONCLUSION

Based on the foregoing discussion, we reverse the district court's order granting summary judgment on the disparate treatment claim and affirm the order granting summary judgment on the disparate impact claim.

A true copy.

   Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]SPFD argues that the parties to the 1994 settlement are precluded by the doctrines of res judicata, payment and release, and accord and satisfaction from challenging the 1988, 1989, and 1993 exams. SPFD further argues that Logan and Webb should be precluded from challenging the 1993 and 1995 exams because they lacked the minimum qualifications. Because the Appellants have failed to produce sufficient statistical evidence to support their prima facie case, we need not decide whether they are precluded from challenging any specific examination.