# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1915

_____

| | | |
|---|---|---|
| Linda Johnson; Reginald Johnson, | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Aaron Crooks, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: November 7, 2002

Filed: April 23, 2003

_____

Before WOLLMAN, LAY, and LOKEN,* Circuit Judges.

_____

LOKEN, Circuit Judge.

This is an action by Linda and Reginald Johnson against Aaron Crooks, a deputy sheriff for Gage County, Nebraska. The Johnsons allege that Crooks stopped Ms. Johnson's car, not for a traffic violation, but because she is an African-American. They assert federal Fourth Amendment, equal protection, and due process claims and pendent claims under Nebraska state law. Crooks appeals the denial of his motion for partial summary judgment dismissing the federal claims on the basis of qualified

_____

*The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

immunity. In an interlocutory appeal challenging the denial of qualified immunity, we consider whether "[Crooks's] conduct which the District Court deemed sufficiently supported for purposes of summary judgment" violated clearly established statutory or constitutional standards of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 313 (1996); see Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001). Viewing the summary judgment record in the light most favorable to the Johnsons, who are the non-moving parties, we conclude that the federal claims must be dismissed and therefore reverse.

## I. Background.

On April 18, 2000, Linda Johnson was driving through rural Nebraska to Fort Riley, Kansas, where she lived with her husband, Army Sergeant Reginald Johnson. As she passed through the town of Beatrice at about 9:15 a.m., deputy sheriff Crooks pulled out from a parking lot and maneuvered his patrol car through traffic until it was directly behind Ms. Johnson's vehicle. After following closely for approximately eleven miles, during which Ms. Johnson avers she was careful not to commit any traffic violations, Crooks signaled her to stop and approached her car. Ms. Johnson asked why he pulled her over. Crooks responded, "because you were going left of center." Ms. Johnson denied crossing the center line and said that Crooks had targeted her because of her race and the type of car she was driving, a 1996 Lexus. Crooks told Ms. Johnson that race had nothing to do with the traffic stop. Rather, he was concerned about her safety. After returning to his patrol car and verifying Ms. Johnson's identity and license validity, Crooks issued her a written traffic warning. Before departing, Ms. Johnson again accused him of stopping her because of her race, which Crooks again denied.

When Crooks asked her for identification, Ms. Johnson gave him her military identification card because she could not quickly find her driver's license. The card listed Ms. Johnson as a dependent civilian whose "sponsor" was Reginald Johnson.

The following day, Crooks called Fort Riley to report the circumstances of the traffic stop "to the proper military supervisory personnel." Crooks was told there was no one in the military at Fort Riley named Linda Johnson. He was referred to the Judge Advocate General's Office, where he spoke, perhaps coincidentally, to Reginald Johnson. Mr. Johnson explained that Ms. Johnson was his wife and a military dependent, not a member of the military. When Crooks complained that Ms. Johnson had accused him of being a racist, Mr. Johnson stated that he believed Ms. Johnson's version of the traffic stop. Crooks asked to speak to Mr. Johnson's commanding officer about Ms. Johnson's warning citation. Mr. Johnson told Crooks how to contact his supervisor, the Deputy Inspector General, but Crooks did not do so.

The Johnsons' amended complaint seeks compensatory and punitive damages and pleads eight causes of action. The four pendent state law claims are not at issue on this interlocutory appeal. The four federal causes of action are Fourteenth Amendment claims for an unreasonable seizure and detention in violation of the Fourth Amendment, and for racially discriminatory treatment that violated the Johnsons' equal protection and due process rights. Crooks moved for summary judgment dismissing each federal claim on the grounds of qualified immunity. The district court denied the motion without separately analyzing the various claims.

## II. The Fourth Amendment Claim.

The amended complaint alleges that Crooks violated the Fourth and Fourteenth Amendments by stopping and detaining Ms. Johnson for an alleged traffic violation. It is well-settled that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren v. United States, 517 U.S. 806, 810 (1996). In determining

the reasonableness of an automobile search or seizure, the Supreme Court recognizes that automobiles are inherently mobile, motorists have a lessened expectation of privacy when traveling on the public highways, and "[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls." South Dakota v. Opperman, 428 U.S. 364, 368 (1976); see Cardwell v. Lewis, 417 U.S. 583, 589-91 (1974).

As the district court recognized, "any traffic violation, even a minor one, gives an officer probable cause to stop the violator. [In such a case,] the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." Conrad v. Davis, 120 F.3d 92, 96 (8th Cir. 1997) (quotation omitted), cert. denied, 523 U.S. 1081 (1998); see Whren, 517 U.S. at 811-13. However, the court denied summary judgment on the Fourth Amendment claim because Linda Johnson has averred that she did not cross the center line prior to the stop, creating a disputed factual issue that cannot be resolved at this stage of the proceedings as to whether Crooks had probable cause to make the stop. The issue on appeal, then, is whether the dispute over whether Ms. Johnson in fact crossed the center line is material for purposes of Crooks's qualified immunity defense to the Johnsons' § 1983 claim for damages.

On appeal, Crooks virtually concedes, and we accept, the district court's determination that Ms. Johnson's affidavit asserting she did not commit a traffic violation creates a genuine fact dispute concerning whether Crooks had probable cause to stop and detain her for that reason. But the district court's analysis overlooked the investigatory aspect of traffic stops in general and of this stop in particular. Because a brief traffic stop is a relatively minor intrusion on the motorist's privacy interests, its Fourth Amendment reasonableness is judged by the standard that applies to investigatory stops -- whether "the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotation omitted); see United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). An officer with reasonable suspicion may stop the

automobile and may question the driver "to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 439 (1984).

Even routine traffic violations may require some investigation into the motorist's conduct or condition, followed by the exercise of judgment in deciding how to enforce the traffic laws in that situation. For example, an officer who initially stops a car for running a red light may then accept the motorist's explanation that the light was yellow when she entered the intersection and let the driver depart with an oral or written warning. At that point, the investigatory stop is complete. See United States v. White, 81 F.3d 775, 777-78 (8th Cir.), cert. denied, 519 U.S. 1011 (1996). The motorist has suffered a delay, perhaps an irritating or even harmful delay, but "a routine traffic stop is an ordinary incident of driving." Ford v. Wilson, 90 F.3d 245, 248 (7th Cir. 1996), cert. denied, 520 U.S. 1105 (1997). If the motorist then brings a § 1983 damage action, does her Fourth Amendment claim survive summary judgment and require a jury trial simply because she avers she did not run the red light? We think not. When an officer stops a motorist for a perceived traffic violation, briefly questions the motorist about what occurred, and lets the motorist depart without issuing a citation or expanding the investigation beyond the question of a traffic violation, the officer has not unreasonably intruded upon the privacy and liberty interests protected by the Fourth Amendment. As the Supreme Court stated in holding police officers not liable under § 1983 for negligently arresting the wrong individual, "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979).

In this case, Crooks observed Ms. Johnson's car crossing the center line more than once on a two-lane rural highway rather early in the morning. In his affidavit supporting the motion for summary judgment on qualified immunity grounds, Crooks explained his reasons for stopping Linda Johnson's car:

4. . . . I then observed that the car immediately ahead of me on several occasions crossed the centerline slightly into the oncoming traffic lane.

5. It is and was . . . my practice . . . depending on the traffic and potential danger involved, not to stop a motor vehicle that drifts slightly over the centerline one or perhaps two times. However, if the vehicle . . . continues to cross the centerline more than once or twice, I pull the car over to further investigate. One factor that I take into consideration . . . is that in the early morning hours and evening hours it is possible that the driver is drowsy . . . or may be suffering from some illness or may possibly be intoxicated.

\* \* \* \* \*

7. The probable cause and my reason for stopping the car ahead of me, which I later found out to be driven by Plaintiff Ms. Linda Johnson, was to investigate the driver's condition and to issue a verbal warning, written warning, or a citation.

Crossing the center line of a two-lane highway is a violation of the statutory Nebraska Rules of the Road. See NEB. REV. STAT. § 60-6,131. More significantly from the standpoint of public safety, driving while excessively fatigued or otherwise impaired is a condition that threatens motorist safety and doubtless violates Nebraska's careless driving prohibition. See NEB. REV. STAT. § 60-6,212. Thus, it was objectively reasonable for Crooks to stop Ms. Johnson's car to determine if she was competent to continue her travels. When satisfied she was, Crooks let Ms. Johnson go with a warning rather than a citation, ending the investigatory stop. In these circumstances, we believe there was no violation of Ms. Johnson's Fourth Amendment rights as a matter of law. At a minimum, Crooks is entitled to qualified immunity from her Fourth Amendment claim because his conduct in enforcing the Nebraska Rules of the Road was objectively reasonable.

-6-

### III. The Equal Protection Claim.

The Johnsons assert a separate Fourteenth Amendment claim under 42 U.S.C. §§ 1981 and 1983, alleging that Crooks made the traffic stop on account of Ms. Johnson's race. This is a cognizable equal protection claim. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." Whren, 517 U.S. at 813. This claim does not require proof that Ms. Johnson was stopped without probable cause or reasonable suspicion to believe she committed a traffic violation. But she must prove that Crooks exercised his discretion to enforce the traffic laws on account of her race, which requires proof of both discriminatory effect and discriminatory purpose. See United States v. Armstrong, 517 U.S. 456, 465 (1996). When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose. See Chavez v. Ill. State Police, 251 F.3d 612, 634-48 (7th Cir. 2001); Gardenhire v. Schubert, 205 F.3d 303, 319 (6th Cir. 2000).

Here, the Johnsons have offered no evidence that Crooks does not stop non-African Americans under similar circumstances. We will assume that a prima facie equal protection claim may also be proved by direct evidence of racial discrimination in this type of case. But the Johnsons presented no such evidence. They rely on Ms. Johnson's personal opinion that she was stopped on account of her race, plus additional aspects of the encounter that do not directly evidence racial animus -- that Crooks was in a position to see Ms. Johnson's race when he pulled out into traffic, that Crooks closely followed Ms. Johnson for eleven miles before pulling her over, and that Crooks called Fort Riley the next day to bring the traffic stop to the attention of either Ms. Johnson's or Mr. Johnson's commanding officer. As the non-moving parties, the Johnsons must "identify affirmative evidence from which a jury could find

that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998).  They failed to do so.  As the Seventh Circuit stated in Ford, "We do not think . . . that the combination of an arbitrary stop . . . with a difference in race between the person stopped and the officer establishes a prima facie case of racial discrimination."  90 F.3d at 248-49.  The district court erred in not dismissing the equal protection claim.

## IV.  The Due Process Claims.

The amended complaint asserts two § 1983 due process causes of action without clearly stating whether they are substantive due process or procedural due process claims.  To the extent a substantive due process claim is asserted, the claim by Ms. Johnson fails because it is "covered by" the Fourth Amendment, County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998), and the claim by Mr. Johnson fails for lack of evidence that Crooks's conduct was conscience-shocking in the constitutional sense of that term.  See Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc).  To the extent a procedural due process claim is asserted, the claim fails because the Johnsons have made no attempt to establish that state law would not have afforded them an adequate post-deprivation tort remedy.  See Zinermon v. Burch, 494 U.S. 113, 130 & n.15 (1990); Parrish v. Mallinger, 133 F.3d 612, 615-16 (8th Cir. 1998).  Indeed, their pendent state law claims tend to establish that adequate post-deprivation remedies are available.  Therefore, the district court erred in not dismissing the due process claims.

For the foregoing reasons, the district court's order dated March 4, 2002 is reversed.  The case is remanded for further proceedings not inconsistent with this opinion.  See Gregoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000).

LAY, Circuit Judge, dissenting.

I respectfully dissent.

I think the majority's opinion will cause a great deal of confusion to all district courts as to the proper summary judgment standard in civil cases. The standard as instructed by the Supreme Court is that district courts must view the evidence in the light most favorable to the nonmoving party. In the present case, the majority recites disputed issues of fact in favor of the moving party and does not give any credence to the nonmoving party's claims. This approach is contrary to every rule governing summary judgment and leads the majority to improperly grant summary judgment for the Defendant, Aaron Crooks. From reading the district court's opinion, it is obvious that the district court applied the correct summary judgment standard. It fully recognized there existed genuine issues of disputed fact; it viewed the evidence in the light most favorable to the nonmoving party; and it provided the nonmoving party all favorable inferences.

A review of the facts shows that Ms. Johnson has made a prima facie case. She is a member of a minority race who drove her car on the public highway and asserted that she did not violate any traffic laws. Sheriff Crooks followed her vehicle closely for <u>eleven</u> miles before stopping her. At that time, Crooks accused her of crossing the center line, an accusation which she vehemently denied. Ms. Johnson said she was well aware that Crooks was following her closely so she was careful to obey all traffic laws. Crooks then asked for her identification, and she presented her military identification because she could not immediately find her driver's license. The military identification showed on the back of it that she was a civilian, which Crooks ignored. He gave her a written warning and then called Fort Riley to report the incident to her superior officer.

Based on these facts, there is no question that Ms. Johnson has made a prima facie case of an unauthorized stop in violation of the Fourth Amendment. Further, she has set forth a prima facie case of racial harassment, which provides a genuine issue for trial as to whether there has been a denial of the Equal Protection Clause. I have set forth the district court's opinion in its entirety at the end of my dissent (Exhibit A) because it provides the proper summary judgment analysis and details the factual disputes of the case.

The primary problem with the majority's Fourth Amendment analysis is that it mischaracterizes the facts, making the case appear more simple than it actually is. The majority recites that when an officer makes a mere investigatory stop, there is no unreasonable intrusion "upon the privacy and liberty interests protected by the Fourth Amendment." Maj. Op. at 5. However, the facts in this case do not allow for such a conclusion. Additional facts, which are not analyzed by the majority, raise doubts about the constitutionality of the stop.

The majority's fact section states that Crooks "maneuvered his patrol car through traffic until it was directly behind Mr. Johnson's vehicle" and then followed her closely for approximately eleven miles. Maj. Op. at 4. Crooks alleges that he followed Ms. Johnson's vehicle because she crossed the center line of the highway. Why he did not immediately effect a stop rather than following her for eleven miles makes Crooks's credibility highly dubious. Further, if we take Ms. Johnson's statement that she did not cross the center line as true, Crooks's stop was arbitrary and capricious. The majority, however, simply credits Crooks's version of the facts even though his stated reasons for stopping Ms. Johnson remain in dispute.

Instead of addressing the relevant facts, the opinion mischaracterizes the case and concludes "it was objectively reasonable for Crooks to stop Ms. Johnson's car to determine if she was competent to continue her travels." Maj. Op. at 6. Such a conclusion assumes that Ms. Johnson swerved her car. In essence, the majority says

that it believes Crooks is telling the truth and Ms. Johnson is not. The opinion further mischaracterizes the case by saying that "Crooks let Ms. Johnson go with a warning rather than a citation, ending the investigatory stop." Maj. Op. at 6. Yet the facts show that Crooks did not simply let Ms. Johnson go. He called Fort Riley and reported the incident. Such behavior does not comport with standard police procedure and extended the stop to more than a "relatively minor intrusion on the motorist's privacy interest." Maj. Op. at 4. A fair inference remains that he called Fort Riley to racially harass Ms. Johnson. This inference is made stronger because Ms. Johnson denied violating any traffic laws.

Much of these same concerns apply to the majority's Equal Protection analysis. The majority states that "'We do not think . . . that the combination of an arbitrary stop . . . with a difference in race between the person stopped and the officer establishes a prima facie case of racial discrimination.'" Maj. Op. at 8 (quoting Ford v. Wilson, 90 F.3d 245, 248-49 (7th Cir. 1996)). Once again, this case is not as simple as the majority suggests. The facts show much more than a difference in race and an arbitrary stop. Here, Crooks called the military and reported the incident. He also followed Ms. Johnson for eleven miles prior to making the stop. These facts, when credited as true, at the very least, should allow the case to survive summary judgment.

The majority faults the district court for failing to distinguish between investigatory stops and individual traffic stops. The majority claims that Ms. Johnson's stop was investigatory and that Crooks had a reasonable suspicion to believe that criminal activity was afoot because he "observed Ms. Johnson's car crossing the center line more than once on a two-lane rural highway . . . ." Maj. Op. at 5. The majority's analysis, however, is persuasive only if we assume that Ms. Johnson crossed the center line. Since the parties dispute this key fact, we cannot say as a matter of law that Crooks had a reasonable suspicion. The district court correctly denied summary judgment because it could not resolve this disputed fact at the

-11-

summary judgment stage. While it is true the district court did not make a distinction between an investigatory stop and an individual stop, the district court did not need to make such a distinction to reach the correct result. As long as the parties dispute whether Ms. Johnson crossed the center line, the issue of whether Crooks had a reasonable suspicion remains.

In conclusion, the majority does not apply the correct standard for summary judgment. The Supreme Court instructs this court in a summary judgment proceeding to view the evidence in the light most favorable to Ms. Johnson, the nonmoving party. The majority bases its analysis upon material facts which are in dispute and views the evidence in the light most favorable to Crooks, the moving party. By accepting Crooks's statements over Ms. Johnson's assertions, the majority has turned the summary judgment standard on its head and has reached an incorrect result.

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINDA JOHNSON and REGINAL JOHNSON, | ) ) ) | 4:01CV230 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR |
| vs. | ) ) | SUMMARY JUDGMENT |
| AARON CROOKS, | ) ) | |
| Defendant. | ) | |

This case is now before me on the Defendant's Motion for Summary Judgment, filing 27. The plaintiffs' Amended Complaint, filing 17, alleges eight causes of action arising from an April 18, 2000, traffic stop conducted by the defendant. In moving for summary judgment, the defendant argues that the doctrine of qualified immunity shields him from the plaintiffs' first four claims. Thus, the defendant continues, the plaintiffs' latter four claims must also fail, as such claims are brought pursuant to the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. After reviewing the submissions of the parties, I find that the defendant's motion will be denied.

## I. *Background*

During the morning hours of April 18, 2000, the plaintiff Linda Johnson (hereinafter L. Johnson) was traveling from Omaha, Nebraska, to Fort Riley, Kansas, in her 1996 Lexus. Around 9:15 a.m., she passed through Beatrice, Nebraska, as she drove south on Highway 77. L. Johnson contends that at the south end of Beatrice, she noticed a patrol car attempting to turn onto the highway from a parking lot. The patrol car, driven by the defendant Crooks, was facing the driver's side of her vehicle. According to L. Johnson, Crooks pulled onto the highway and "maneuvered his way

*Exhibit A*

through traffic" to position himself behind her.  Aff. of Linda Johnson ¶ 2, filing 40 at Ex.  1.  Crooks then allegedly followed L. Johnson "at a very close distance" for approximately eleven miles.  *Id.*  ¶ 4.  L.  Johnson states that during this time, she "took extra precaution to ensure that [she] would do nothing wrong or commit any traffic violation so as not to give him any reason to stop [her]."  *Id.*  ¶ 3.  Nevertheless, Crooks activated his light to initiate a traffic stop.

L. Johnson asserts that after Crooks approached her car and asked her several questions, she inquired as to why he pulled her over.  Crooks responded that she was stopped for "'going left of center."'  *Id.*  ¶ 5.  L. Johnson replied that she believed she had been targeted "'because of the color of [her] skin[1] and the type of car [she was] driving.'"  *Id.*  L.  Johnson then began looking for her driver's license and car registration.  She could not find her license, but she did locate her dependent military identification card when she reached into the glove compartment for the registration.  This front of this card includes L.  Johnson's picture, signature, and social security number, as well as he name, social security number, rank, and pay grade of her "sponsor."  *See* filing 40 at Ex.  1-A, p.1.  The back of the car indicates that L. Johnson is a civilian.  *See id.*  at Ex.  1-A, p.2.

L.  Johnson gave the military identification card to Crooks, who said he could use the card to obtain the information he needed.  L.  Johnson asked if she could look in the trunk for her license.  Crooks responded that she could and then went back to his patrol car.  After her unsuccessful search of her trunk, L.  Johnson reentered her vehicle and found her license on the floor of the passenger's side.  According to L. Johnson, she gave the license to Crooks, who indicated he did not need it.  She went back to her vehicle and waited for Crooks, who later returned to her vehicle and issued her a written warning.  L.  Johnson again protested that she had not in fact "gone left of center," and again advised Crooks that she believed she had been stopped because of her race and the type of car she was driving.  Aff.  of Linda Johnson  ¶ 7, filing 40 at Ex.  1.  She then pulled back onto Highway 77 and continued south.

According to L.  Johnson, she was "courteous and cooperative" with Crooks throughout their encounter.  *Id.*  ¶ 8.  Both L.  Johnson and her husband, plaintiff Reginald C.  Johnson (hereinafter R.  Johnson), also indicate that as of the date of the

---

[1]Both plaintiffs are "Afro-American United States citizen[s]."  Filing 17 ¶ 2.

*Exhibit A*

stop, the windows of their 1996 Lexus were not tinted. *See id.* ¶ 10; Aff. of Reginald C. Johnson ¶ 5, filing 40 at Ex. 2.

The defendant Crooks recounts a different version of events relating to the April 18, 2000, stop. According to Crooks, he had to wait for a number of cars as he attempted to turn onto Highway 77. He asserts that after the cars passed, he pulled onto the highway "some distance behind" the last car. Aff. in Supp. of Def.'s Mot. for Summ. J. [hereinafter Aff. of Aaron Crooks] ¶ 3, filing 28 at Ex. 1. He states that although he initially did not notice anything in particular about the vehicles in front of him, he later observed the vehicle immediately in front of him cross the center line into the oncoming traffic lane on "several occasions." *Id.* ¶ 4. Concerned about the driver's condition, he activated his lights to initiate a stop.

According to Crooks, the windows of the vehicle were tinted. Thus, he asserts that "[i]t was not until I was near the passenger's door that I saw that the driver was an Afro-American female." *Id.* ¶ 9. Crooks states that after he greeted L. Johnson, she interrupted him and accused him of stopping her because "'of the type of car she was driving and because of the color of her skin.'" *Id.* ¶ 10. She appeared "extremely upset and very unfriendly." *Id.* "[S]omewhat offended and disappointed with her response," Crooks advised L. Johnson that she had been stopped for driving "left of center several times." *Id.* Crooks states that he requested her driver's license and registration, but L. Johnson was unable to locate the former. Thus, according to Crooks, L. Johnson then advised him that she was in the military and had a military identification card. Crooks responded that he could use the military identification to obtain the necessary information and that she no longer needed to look for the license. L. Johnson, however, "continued to insist upon finding the license" so she "'wouldn't get into any more trouble.'" *Id.* ¶ 15. Crooks states that he told her she was not necessarily in trouble and that he was primarily concerned about her safety. He nevertheless allowed her to continue her search for the license in the trunk as he went back to his patrol car.

Crooks asserts that while he was calling in her information, L. Johnson found her license and approached the patrol car. Crooks advised her to return to her car and wait for him. After completing the information check, Crooks went back to the vehicle where he found L. Johnson talking on her cell phone. When she finished her conversation, Crooks handed her a written warning and told her there was a truck stop ahead if she was tired. L. Johnson again commented that she believed she had been

*Exhibit A*

stopped because of her race and the type of car she was driving, and Crooks again assured her "that such was not the case." *Id.* ¶ 21. She also inquired whether Crooks would continue to follower her, and Crooks responded that he would be going in the same direction as she, but not for the purpose of following her. L. Johnson then pulled back onto Highway 77.

Crooks states that, based on his military background, "it is my belief and understanding of military procedure that any contact or stop by a law enforcement officer should result in the information of the stop being forwarded to the superior officer of the individual." *Id.* ¶ 24. Crooks felt that in this case, such follow-up was "especially necessary . . . since Ms. Johnson had made accusations of inappropriate conduct on [his] part, which were absolutely false." *Id.* Thus, the next day, Crooks contacted Fort Riley in an alleged attempt to reach L. Johnson's First Sergeant. Crooks was told that there was no military person by the name of Linda Johnson at the base and was advised to contact the Judge Advocate General's Office for further information. According to Crooks, he did so by telephone, "and coincidentally the phone was answered by a man who identified himself as Mr. Reginald Johnson." *Id.* ¶ 25. During their conversation, Crooks tried to explain what had occurred regarding the traffic stop. R. Johnson responded that L. Johnson was his wife, that she had already told him what happened, and that he believed his wife. Crooks then advised R. Johnson that he believed the matter should be reported to L. Johnson's First Sergeant or a superior officer. R. Johnson indicated that his wife was not in the military and then transferred Crooks to another individual, who also advised Crooks that L. Johnson was not in the military. Crooks concludes as follows:

> After having done what I believed was appropriate regarding the stop and with the information given to me by Ms. Johnson regarding military affiliation, and after finding out that military affiliation was not true, I took no further course of action to inform anyone in the military that Ms. Johnson had made a false claim of military affiliation.

*Id.* ¶ 26.

R. Johnson, however, recalls a somewhat different telephone conversation with Crooks. An Assistant Inspector General at Fort Riley, R. Johnson states that on the morning of April 19, 2000, Crooks contacted the Inspector General's Office, and the call was transferred to R. Johnson by a secretary. R. Johnson asserts that when

*Exhibit A*

he answered the telephone, "Crooks made it clear . . . that he had called for me." Aff. of Reginald C. Johnson ¶ 4, filing 40 at Ex. 2. In describing the traffic stop, Crooks "specifically suggested that [L. Johnson] had acted inappropriately." *Id.* According to R. Johnson, Crooks "stated he wanted to talk to [R. Johnson's] superior officer about the warning citation," and "specifically stated he knew [L. Johnson] was a military dependent and [R. Johnson], as her spouse, was responsible for her actions." *Id.* After advising Crooks that he believed his wife's version of events, R. Johnson gave Crooks the phone number of a First Sergeant and the Deputy Inspector General.

## II. *Standard of Review*

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 158-59 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256, 257 (citing FED. R. CIV. P. 56(e)).

## III. *Analysis*

The plaintiffs filed their Amended Complaint on August 13, 2001, alleging the following eight causes of action: (1) a Fourteenth Amendment due process violation; (2) a Fourth Amendment violation; (3) a Fourteenth Amendment equal protection violation; (4) a second, separate Fourteenth Amendment due process violation; (5) a violation of NEB. REV. STAT § 20-148 and NEB. CONST. art. I, §§ 3, 7; (6) false arrest and false imprisonment; (7) a violation of NEB. REV. STAT. § 28-926; and (8) a violation of NEB. REV. STAT. § 20-201 *et seq.* and "the common law of the state

*Exhibit A*

of Nebraska." Filing 17 at 4-8. Claims one through four are based on 42 U.S.C. § 1983,[2] while claims five through eight are brought pursuant to the court's supplemental jurisdiction. In his motion for summary judgment, the defendant Crooks contends that the first four causes of action "are barred by the [d]octrine of [q]ualified [i]mmunity." Br. in Supp. of Def. Aaron Crooks' Mot. for Summ. J. [hereinafter Defendant's Brief] at 7. Without these claims, Crooks concludes, the plaintiffs' latter four causes of action must also fail for lack of jurisdiction.

The doctrine of qualified immunity "shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996)). A claim of qualified immunity triggers a two-part inquiry: "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, . . . whether that right was clearly established at the time of the alleged violation.'" *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1990); citing *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000)). When the qualified immunity defense is raised during the summary judgment stage, "the official's conduct must be viewed through the prism of Rule 56 - that is, [the court] must take as true those facts asserted by [the] plaintiff that are properly supported in the record." *Id.* (citations omitted). Thus, "'if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999)). After the predicate facts are established, "the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka*, 244 F.3d at 632 (citing *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)); *Pace*, 201 F.3d at 1056 ("We restate for emphasis that whether an officer 'acted reasonably under settled law in the circumstances' . . . is a question of law, and not itself a predicate fact. 'Predicate facts' include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions." (internal citation omitted)).

---

[2]The third cause of action is also based on 42 U.S.C. § 1981. *See* filing 17 ¶ 15.

*Exhibit A*

In moving for summary judgment, the defendant Crooks contends that "there is no constitutional violation when a valid warrant or probable cause supports an arrest, regardless of the motives of the arresting officer." Defendant's Brief at 8 (citations omitted); *see Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Conrad v. Davis*, 120 F.3d 92, 96 (8th Cir. 1997), *cert. denied*, 523 U.S. 1081 (1998) ("[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator. If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." (quoting *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996)). Thus, Crooks seems to be arguing that because he saw L. Johnson cross the center line, he had probable cause to stop her, and his motives for stopping her, even if improper, are therefore irrelevant. *See* Defendant's Brief at 9; Aff. of Aaron Crooks ¶ 4, filing 28 at Ex. 1. Had L. Johnson admitted that she committed a traffic offense, I woUld be included to agree with Crooks' analysis, at least with respect to the plaintiffs' Fourth Amendment claim. *See, e.g., Conrad*, 120 F.3d at 96 (concluding that "even if [the defendant] presented evidence that [the officer's] stated reasons for stopping [the defendant] were pretextual, such evidence would not invalidate the stop and arrest" since the defendant "[did] not dispute the fact that he was speeding" (citing *Whren*, 517 U.S. at 813)); *see also Whren*, 517 U.S. at 813 ("[T]he constitutional basis for objecting to intentionally discriminatory application of law is the Equal Protection Clause, not the Fourth Amendment."); *United States v. Pipes*, 125 F.3d 638, 640 (8th Cir. 1997), *cert. denied*, 523 U.S. 1012 (1998) ("Of course, officers must not selectively enforce the law based on unconstitutional considerations, but such claims fall under the Equal Protection Clause, not the Fourth Amendment." (citation omitted)). Here, however, the question of whether L. Johnson crossed the center line is a disputed factual issue that cannot be resolved at this stage of the proceedings. *Compare* Aff. of Linda Johnson ¶ 4, filing 40 at Ex. 1 ("[A]t no time did I ever cross the center line of the highway."), *with* Aff. of Aaron Crooks ¶ 4, filing 28 at Ex. 1 ("I then observed that the car immediately ahead of me on several occasions crossed the centerline slightly into the oncoming traffic lane."); *see Anderson*, 477 U.S. at 255 ("Credibility determines, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *Mems v. City of St. Paul*, 224 F.3d 735, 739 (8th Cir. 2000) ("[C]redibility determinations fall within the fact finder's purview, not ours."); *Grossman v. Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir. 1995) ("We may

*Exhibit A*

neither weigh evidence nor make credibility determinations at the summary judgment stage." (citation omitted)). Given the allegations in the plaintiffs' affidavits, it seems to me that factual issues also remain as to whether the stop was the product of racial discrimination. Thus, because "'there is a genuine dispute concerning predicate facts material to the qualified immunity issue,'" I cannot find, as a matter of law, that Crooks "acted reasonably under settled law in the circumstances." *Gregoire*, 236 F.3d at 417 (citation omitted); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Accordingly, the defendant Crooks' motion for summary judgment must be denied.

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment, filing 27, is denied.

Dated March 4, 2002.

BY THE COURT

/s/ Warren K. Urbom
Warren K. Urbom
United States Senior District Judge.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

*Exhibit A*