Terry **HARRINGTON** and Curtis W. McGhee, Jr., Plaintiffs,

v.

**CITY OF COUNCIL BLUFFS, IOWA,** Daniel C. Larsen, in his individual and official capacities, and Lyle W. Brown, in his individual and official capacities, Defendants.

Nos. 4:03–cv–90616, 4:05–cv–00178, 4:05–cv–00255.

United States District Court, S.D. Iowa, Central Division.

Oct. 29, 2012.

David Stephen Baker, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, KS, Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm, LLP, Council Bluffs, IA, for Defendants.

Thomas P. Frerichs, Frerichs Law Office, Waterloo, IA, Stephen Dillard Davis, Steve Davis Law, PC, Oak Brook, Pro Hac Vice, William H. Jones, Canel, Davis & King Chicago, IL, Larissa A. McCalla, Spence, Shockey & McCalla, Pro Hac Vice, J. Douglas McCalla, Mel C. Orchard, Gerald L. Spence, The Spence Law Firm, LLC, Jackson, WY, Pro Hac Vice, Alan O. Olson, Olson Law Office, PC, Des Moines, IA, for Plaintiffs.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court are the City of Council Bluffs' (the "City"), Daniel Larsen's ("Larsen"), and Lyle Brown's ("Brown") (collectively "Defendants") joint motions in limine, filed September 6, 2012. Clerk's No. 290. On September 24, 2012, Plaintiff Curtis W. McGhee ("McGhee") filed a response, in which Plaintiff Terry J. Harrington ("Harrington") joined. Clerk's Nos. 297–98. Defendants replied on Octo-

ber 4, 2012. Clerk's No. 304. The matter is fully submitted.

## I. MOTIONS

### A. Defendants' First, Second, and Fourth Items

■■■ The first three items [1] in Defendants' Motion in Limine request: 1) that the Court find Plaintiffs' remaining claims are barred by the statute of limitations; 2) that the Court bar Plaintiffs' from offering approximately 100 different categories or items of evidence because the doctrines of res judicata and collateral estoppel prevent Plaintiffs from relitigating matters determined in their post-conviction proceedings; and 3) that the Court bar Plaintiffs from presenting any evidence that could arguably have supported claims against Defendants for which they have qualified immunity. Although labeled as motions in limine, Defendants' first three motions are actually dispositive motions.[2] Since they were not filed by the deadline for dispositive motions, they are hereby stricken as untimely.[3]

### B. The City's Indemnification of Its Police Officers

Defendants seek the exclusion of any evidence referring to the City's obligation to indemnify Larsen and Brown for any compensatory damages should the jury find them liable. Clerk's No. 290–1 at 51–52. Defendants contend that evidence concerning indemnity is forbidden for the same reasons and to the same extent as evidence of insurance coverage. *See id.* at 51. Defendants further maintain that, even if relevant, the evidence at issue would be unfairly prejudicial. *See id.* Additionally, Defendants assert that evidence referring to the City's obligation to indemnify its police officers for any compensatory damages would cause jury confusion in the event that punitive damages are awarded since the City would have no indemnity obligation for punitive damages, and Larsen and Brown would be personally responsible for the payment of such damages. *See id.* at 51–52.

Plaintiffs respond that since the City is a party to the case and is liable pursuant to

1. Defendants incorrectly numbered the third item as the fourth item in their Motion.

2. Defendants seventh request, discussed further in *infra* § 1D, is also predominantly an improper attempt to bar Plaintiffs from presenting one of their claims to the jury under the guise of a motion in limine. Although Defendants insist that their first, second, fourth, and seventh items "only seek to preclude the introduction of evidence and do not seek entry of judgment in their favor," the Court is not persuaded by Defendants' argument.

3. Even if the Court declined to strike Defendants' offending requests, it would nonetheless deny the motions in limine asserted in Defendants' first three items. First, regarding the statute of limitations, the Court finds Defendants' argument unconvincing for reasons outlined in Plaintiffs' resistance and in the Court's own prior orders on the topic. Despite Defendants' vociferous arguments to the contrary, nothing in the most recent

Eighth Circuit ruling in this case changes the Court's prior analysis on the statute of limitations. Second, regarding Defendants' claims that collateral estoppel and res judicata bar Plaintiffs from presenting vast and numerous categories of evidence, the Court finds both doctrines inapplicable in this situation, for reasons stated in prior Orders. *See* Clerk's No. 335; Case No. 4:05–cv–255, Clerk's No. 165. Third, regarding Defendants claim that Plaintiffs' cannot present any testimony relating to matters for which Defendants are immune, the Court would deny the request for largely the same reason the Court declined to prohibit Plaintiffs from presenting testimony regarding the undisclosed Gates reports: "[T]he mere fact that Defendants may be immune from liability [on specific claims asserted by Plaintiffs] during trial does not mean that evidence regarding the fact[s surrounding those matters are] inadmissible for all purposes." Clerk's No. 335 at 4.

Iowa Code § 670.8 for the torts of its employees, the jury is entitled to know about the indemnification. *See* Clerk's No. 297 at 13–16. Plaintiffs further assert that, under the Iowa Comparative Fault statute, the jury must be informed as to the legal effects of its findings in every comparative fault lawsuit, including the present one. *See id.* at 14–15.

■ Generally, the fact that a party to a case is "protected by insurance or other indemnity cannot be shown." *Halladay v. Verschoor,* 381 F.2d 100, 112 (8th Cir.1967). The notion of fair trial is irreconcilable with the introduction of evidence of indemnity since the inevitable inference would be that "the damages sued for have been or will be taken care of by an ... indemnity company." *Id.* The danger of introducing such evidence is that it would lead to "an overly generous award of damages." *See Griffin v. Hilke,* 804 F.2d 1052, 1058 (8th Cir.1986). Evidence of indemnity can be admitted only if it is a material issue in the case or if "the prejudicial effect has been cured by admonition" or a limiting instruction to the jury. *Halladay,* 381 F.2d at 112.

■ Despite the general prohibition against introducing evidence of an indemnity obligation, the law does not completely foreclose the possibility of introducing such evidence. For instance, if Plaintiffs can show the relevance of the City's indemnity obligation to the claims being tried, the jury *may* be permitted to hear the evidence and the Court could arguably cure any potential prejudicial effect of such evidence through an admonition or a limiting instruction. Plaintiffs, however, have not yet demonstrated the relevance of the evidence at issue. Instead, Plaintiffs argue that Iowa Code § 668.3(5) mandates that the jury must know that any damages awarded against Larsen and Brown will be paid by the City. *See* Clerk's No. 297 at 14; *see also* Iowa Code § 668.3(5) ("If the

claim is tried to a jury, the court shall give instructions and permit evidence and argument with respect to the effects of the answers to be returned to the interrogatories submitted under this section.").

■ Plaintiffs' argument finds no support in the case law. The ultimate question of who bears final responsibility for paying any damages award is utterly beyond the scope and the purpose of § 668.3(5). A review of the relevant cases reveals that this provision's purpose is to ensure that, in every comparative fault lawsuit, the jury is informed as to the legal effect of its findings regarding the respective fault of each party. *See Reese v. Werts Corp.,* 379 N.W.2d 1, 3–4 (Iowa 1985) ("This provision requires the court to instruct the jury not only on the effect of the claimant's contributory fault but also on the effect of the fault of other parties. One such effect is that a defendant who bears less than fifty percent of the total fault is not jointly and severally liable."); *Sullivan v. Wickwire,* 476 N.W.2d 69, 72 (Iowa 1991)("In accordance with Iowa's comparative fault statute, the court directed the jury to answer special interrogatories indicating plaintiff's total damages (without reduction for contributory fault, if any) and the percentage of total fault allocated to plaintiff, the settling parties, and defendant State of Iowa. This special verdict form was preceded by the [following jury instruction as required by Iowa Code § 668.3(5) ] ...: After you have compared the conduct of all parties, if you find [that the deceased] was at fault and her fault was more than fifty percent of the total fault, the plaintiff ..., administrator of the estate of [the deceased], cannot recover damages. However, if you find [that the deceased's] fault was fifty percent or less of the total fault, then I will reduce the total damages by the percentage of her fault."). Plaintiffs have not cited any legal

authority—and the Court has found none—for the proposition that evidence of indemnity obligation is admissible pursuant to § 668.3(5). Accordingly, Defendants' Motion is preliminarily granted, and Plaintiffs are prohibited from introducing evidence of the City's indemnity obligation until such time as they are granted leave to do so. Such leave will be granted only in the event Plaintiffs clearly demonstrate a basis for admissibility by articulating, with reference to case law, how the City's indemnity obligation is relevant to any claims in this case.

### C. *Compromise and Offers to Compromise*

Defendants request that the Court exclude from admission at trial any evidence "about compromise, offers to compromise, or conduct or statements made in compromise negotiations under Federal Rule of Evidence 408 for the reason that they are not admissible to show liability or damages." Clerk's No. 290–1 at 52–53. In its February 27, 2007 Order, the Court ruled on precisely the same motion filed by Defendants, holding:

Defendants move in limine for an order excluding from trial all evidence of and references to compromise, offers to compromise, or conduct or statements made in compromise negotiations or settlement conferences by Defendants. Federal Rule of Evidence 408 provides:

(a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

[P]laintiffs ask that the Court deny the Defendants' motion to exclude evidence of settlement negotiations to the extent such evidence is permissible under Rule 408. [P]laintiffs do not [, however,] articulate the context in which such evidence is likely to arise in the present case. Accordingly, the Court preliminarily grants Defendants' motion. Should Plaintiff[s] find it necessary to offer evidence of offers to compromise or settlement negotiations for a permissible purpose during the trial, they shall petition the Court to offer such evidence outside the presence of the jury and before the introduction of such evidence.

Case No. 4:05–cv–00255, Clerk's No. 193 at 14–15. The Court reaffirms its prior Order.

Plaintiffs insist that evidence of the City's offers to compromise would be admissible, in the event that Defendants claim that Larsen and Brown were State, rather than City, employees. *See* Clerk's No. 297 at 17 ("If ... [D]efendants assert that Larsen and Brown acted as State

employees, then [P]laintiffs reserve the right to present the City's offers to compromise in refutation of this claim: If the City is not responsible for Larsen's and Brown's acts, why has it offered money?"). Plaintiffs are likely correct; however, at this juncture, it is unclear whether "[D]efendants [will] assert that Larsen and Brown acted as State employees." *See id.* Should Defendants make such an assertion at trial, Plaintiffs are free to request, outside the presence of the jury, leave to present evidence on this topic to the jury.

### D. *Racial Animus*

■ Defendants move in limine to exclude Carl Wright's ("Wright") testimony that Defendants' actions were racially motivated. Defendants assert the following two bases for their Motion: (1) Wright's testimony is improper lay witness testimony under Federal Rule of Evidence 701, *see* Clerk's No. 290–1 at 54–55; and (2) his testimony is irrelevant, or if relevant, its probative value is outweighed by its unduly prejudicial effect, *see id.* at 56. The Court addressed the first ground for exclusion of the testimony in its February 27, 2007 Order, wherein it stated:

Defendants seek to exclude from trial any evidence by Plaintiffs' witness Carl Wright that race played a role in the filing of criminal charges against the Plaintiffs for the murder of John Schweer. Mr. Wright was Terry Harrington's former football coach and will be offered as a lay witness to testify to his belief that he was with Terry Harrington at the time Schweer was murdered. At deposition, Mr. Wright also commented that he believes that the fact that Terry Harrington was a young, black male at the time of the events giving rise to this case played an important factor in his conviction.

Federal Rule of Evidence 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and [ (c) ] not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." *Burlington N. Ry. Co. v. State of Neb.,* 802 F.2d 994, 1004 (8th Cir.1986). Defendants argue that Mr. Wright gave an "off the cuff opinion" about the role he believed race played in the filing of criminal charges against Harrington, but did not identify any factual inquiries or observations he had to support his opinion. Plaintiffs counter, however, that Mr. Wright can testify about his own inferences drawn from his perception of racial issues at the time.

The Court believes that if an adequate factual foundation is laid for Mr. Wright's opinion, that it *may* be admissible. However, based on the information currently known to the Court, there is insufficient evidence of the basis of Mr. Wright's knowledge to permit his testimony at this time. Defendants' motion is, therefore, preliminarily granted. The Court will, however, entertain an offer of proof made outside the presence of the jury to determine if Mr. Wright does, in fact, have a sufficient basis of personal knowledge to opine about whether race played a factor in the arrest and conviction of Plaintiffs for Schweer's murder. Until such an offer of proof and ruling is complete, however, the parties shall refrain from discussing

Mr. Wright's opinion testimony in the presence of the jury.

Case No. 4:05–cv–00255, Clerk's No. 193 at 11–12. Regrettably, Wright is now deceased.[4] *See* Clerk's No. 297 at 20.

 Regarding Defendants' claim that Wright's testimony is irrelevant, the Court concludes that, as long as proper foundation is laid, the evidence is relevant and, thus, admissible. The relevancy threshold established by the Federal Rules of Evidence is fairly low. *See* Fed.R.Evid. 401 ("'Relevant evidence' means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (emphasis added)).

In opposing the admissibility of Wright's testimony, Defendants rely primarily on *Johnson v. Crooks,* 326 F.3d 995 (8th Cir. 2003). In that case, § 1983 plaintiffs raised an equal protection claim in the context of a traffic stop, which the plaintiffs claimed was racially-motivated. *See Johnson,* 326 F.3d at 999–1000. The only evidence presented by the plaintiffs that tended to show that the stop was racially-motivated was the plaintiff-driver's personal opinion. *See id.* at 1000. The Eighth Circuit held that the evidence presented was insufficient to establish a "prima facie case of racial discrimination." *Id.* (cita-

tions omitted). Defendants extrapolate this holding to the present case and conclude that Wright's testimony is "not probative of the requisite racial animus." Clerk's No. 290–1 at 56.

This case is, however, significantly different from *Johnson.* Not only is Mr. Wright not a party to this case, but he also appears, during his 2005 deposition, to have testified generally as to the existing racial prejudices in 1977 in the Omaha–Council Bluffs area. *See* Clerk's No. 290–1 at 54; Clerk's No. 297 at 20–21. His opinion was not based on a single occurrence, but on his life-long experiences and observations. In contrast, the plaintiff-driver in *Johnson* offered only her personal opinion relating to the officer's motivation for the traffic stop. Furthermore, unlike the plaintiffs in *Johnson,* Plaintiffs here intend to call other witnesses, such as David Dutton, a former President of the Iowa County Attorneys Association, in addition to Wright to establish racial animus. Clerk's No. 297 at 21. With these distinctions in mind, the Court concludes that *Johnson* is not controlling, and Wright's testimony is relevant and admissible, provided that Plaintiffs first provide the proper foundation. Thus, the Court endorses its 2007 decision to preliminarily grant this Motion pending Plaintiffs' attempt to lay foundation for the admissibility of this spe-

---

**4.** Though the Defendants have not directly raised any hearsay objection to Wright's testimony, the Court finds it appropriate to address such a potential objection now. Federal Rule of Evidence 804 provides, in relevant part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> (1) Former testimony. Testimony given as a witness ... in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to devel-

op the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b)(1). Under this Rule, Wright's deposition testimony would not be barred as impermissible hearsay because: (1) he is "unavailable as a witness" (Rule 804(a)(4) provides that death is one of the situations encompassed by the definition of "unavailability as a witness."); (2) he gave his testimony as a witness in a deposition taken in accordance with the law in preparation for this case; and (3) Defendants had "an opportunity and similar motive to develop [his] testimony" during the deposition. *Id.* Therefore, Wright's deposition testimony would survive a hearsay objection.

cific part of Wright's testimony. To the extent Defendants are asserting a broader request prevent Plaintiffs from attempting to establish that a racial animus motivated Defendants' actions, Defendants request is denied, for the reasons stated *supra* and for the reasons articulated in Plaintiffs' resistance brief. *See* Clerk's No. 297 at 18–21 (discussing other potential evidence of discriminatory animus by Defendants, including Larsen's oft-related story referring to "ghetto dwellers").

### E. *Punitive Damages against the City*

Since punitive damages cannot be assessed against the City, either in a § 1983 claim or under state law, Defendants seek the exclusion of any evidence referring to such damages. *See* Clerk's No. 290–1 at 56–57. Plaintiffs do not oppose this Motion "subject to [their arguments relating to the] financial resources of any defendant other than defendant police officers." Clerk's No. 297 at 21. Therefore, the Court grants Defendants' Motion, and the parties are, accordingly, barred from presenting evidence at trial relating to punitive damages against the City, subject to the Court's ruling in § I.F below.

### F. *Financial Resources of Any Defendant Other Than Defendant Police Officers*

Since Defendants' financial resources are irrelevant to their alleged liability to Plaintiffs, Defendants seek the exclusion of any evidence referring to their financial resources, except as such evidence relates to the issue of punitive damages to be assessed against Larsen and Brown in their individual capacities as police officers. *See* Clerk's No. 290–1 at 57. Plaintiffs do not resist the Motion, "but with one caveat: ... [i]n the event that the City has agreed to pay any punitive damages,[5] then its financial resources would be relevant and admissible evidence." Clerk's No. 297 at 21, 22. The Court concludes that it cannot, at this time, issue a definitive ruling on this Motion. Therefore, if the evidence presented during trial establishes that the City has agreed to indemnify Larsen and Brown for any punitive damages assessed against them, the Court will revisit the admissibility of the evidence at issue. Until such time, however, the parties are barred from presenting evidence of Defendants' financial resources.[6]

### G. *City Employees Other Than Named Defendants*

Defendants move in limine to "[(1)] Preclude Plaintiffs from now asserting any claims against the undefined "John Doe" defendants[;] and [(2)] preclude them from making reference to any alleged bad acts of individuals other than the specifically named Defendants." Clerk's No. 290–1 at 57–58. Plaintiffs do not resist the first part of Defendants' Motion. With respect to the specific references to bad acts of individuals other than the named Defendants, Plaintiffs object to Defendants' failure to identify any specific evi-

---

5. Plaintiffs opine that, to their knowledge, "Larsen and Brown have not demanded that the City settle the case to protect their assets, and so it is possible that the City has agreed to indemnify Larsen and Brown against punitive damages." Clerk's No. 297 at 21–22.

6. The parties are further advised that this Court will conduct any necessary punitive damages phase of trial only if the jury returns verdicts in favor of Plaintiffs, and then, only *after* the return of such verdicts. Accordingly,

no reference to punitive damages shall be made during the phase of trial regarding Defendants' liability for Plaintiffs' §§ 1983 and 1985 claims. Rather, the jury will be advised that it *may* have additional work to complete after it reaches verdicts in the case. After verdicts are returned, if necessary, the parties will be permitted to present any additional evidence, and the jury will be further instructed and deliberate separately on punitive damages.

dence that they wish to exclude. *See* Clerk's No. 297 at 22. Plaintiffs further argue that such references would be relevant because "[P]laintiffs allege that the City's failure to train and supervise [its police officers] was the moving force in the violations." *Id.*

At the outset, the Court notes that a motion in limine is not the proper vehicle to seek dismissal of the John Doe claims. Nonetheless, it does not appear that Plaintiffs plan to assert such claims at trial and the Court has no intention of including references to John Doe defendants in its instructions to the jury. As to the alleged irrelevance of evidence concerning bad acts by unnamed police officers, the Court notes that Defendants have failed to show why such evidence is irrelevant. Therefore, the challenged evidence may be admissible, and Defendants' Motion is preliminarily denied as the Court simply does not presently have enough information to render a definitive ruling. In the event that Plaintiffs attempt to elicit any particular testimony that Defendants find inappropriate, Defendants remain free to object.

### H. *Per Diem and Specific Dollar Amount for Non–Economic Damages*

Defendants seek to exclude any reference by Plaintiffs, their lawyers, witnesses, or agents to lump-sum or per diem calculations of non-economic damages. *See* Clerk's No. 290–1 at 58. Defendants ground their arguments primarily in the reasoning offered in one journal article and two appellate cases, one from the Second and the other from the Third Circuit. *See id.* at 59–60. As Defendants point out, however, there is an Eighth Circuit case exploring the very issue before the Court. *See Vanskike v. ACF Indus., Inc.,* 665 F.2d 188, 211 (8th Cir.1981). In *Vanskike,* the Eighth Circuit stated:

We recognize that limitation of counsel's argument to the jury on computation of damages is within the discretion of the district judge. Therefore, although we continue to condemn instructions requiring per diem mathematical calculations, we do not disapprove of per diem closing arguments as long as such arguments are carefully controlled by the district court.... Our position continues to be, however, that unit-of-time calculations are arbitrary and artificial. As stated in *Flanigan v. Burlington Northern, Inc.,* supra, 632 F.2d [880] at 886 [ (8th Cir. 1980) ]:

> The same amount of pain and suffering does not occur from year to year nor can the degree of pain and suffering that will occur in any year be quantified with any degree of certainty. Requiring the reduction of an award for pain and suffering to its present value would improperly allow a jury to infer that pain and suffering can be reduced to a precise arithmetic calculation.

Because we have reversed and remanded the damages issue for a new trial on another ground, *see* Part VII B supra, on remand the district court should take steps to insure fairness in the per diem argument. The jury should be cautioned that references to per diem damages in closing arguments are not evidence, but merely a form of argument, and that pain and suffering cannot be reduced to a precise arithmetic calculation.

*Id.* (internal citations omitted).

██ Although, at first, this case seems to condemn any reference to per diem or lump-sum calculations of damages, a closer reading reveals that such references are allowed in closing arguments (but not in jury instructions), as long as they are "carefully controlled by the district court."

*Id.* Though the Court has carefully considered the authorities cited by Defendants, it is compelled to follow *Vanskike.* The Court's conclusion is bolstered by the fact that a 1992 Eighth Circuit case followed *Vanskike* on the issue of "per diem closing arguments." *See Manning v. Lunda Constr. Co.,* 953 F.2d 1090, 1093 (8th Cir.1992)(restating the *Vanskike* rule that per diem closing arguments are acceptable, as long as they are controlled by the court). If, during closing arguments, Plaintiffs refer to per diem or lump-sum calculations of their noneconomic damages, Defendants will have an opportunity to object and request an appropriate limiting instruction.[7] *See id.* Therefore, Defendants' Motion is denied in part insofar it urges the Court to exclude any reference to per diem or lump-sum calculations and granted in part insofar as the Court will not allow references to such per diem or lump-sum calculations in the jury instructions and will issue limiting jury instructions as appropriate.

## I. *Dilatory Purpose or Abuse of Appeal Rights*

Defendants seek the exclusion of any references by Plaintiffs regarding Defendants' alleged dilatory purpose in prosecuting their appeals and numerous motions in this case. *See* Clerk's No. 290–1 at 61. Defendants caution the Court as to the possible prejudicial effect of such references if mentioned in the presence of the jury. *See id.* It is, frankly, unclear to what extent Plaintiffs resist or concede Defendants' request. On the one hand, after outlining Defendants' alleged dilatory purpose in the appeals and delays in this case, Plaintiffs state, "[h]aving said all this, [Plaintiffs do] not plan to share the ins-and-outs of the collateral order appeal doctrine with the jury." Clerk's No. 297 at

24. On the other hand, Plaintiffs go on to state, "[s]till the calendar is the calendar . . . [t]he City is defending the indefensible still, and it is only fair that we speak this truth at trial." *Id.* at 24–25.

■ At this point, having no particular knowledge as to what Plaintiffs plan to introduce or omit from trial, the Court is inclined to agree that fairness would permit Plaintiffs to generically explain to the jury the series of events that have occurred over the years causing these cases to be filed more than twenty-five years after the Plaintiffs' 1978 trials, and to be litigated over seven years after that. However, to the extent that Plaintiffs would introduce such timeline in an effort to imply that Defendants have been pursuing dilatory purposes or abusing appeal rights, the Court agrees with Defendants that this is impermissible. Accordingly, Defendants' Motion is granted as to the specific request to "keep the jury from hearing Plaintiffs comment upon or characterize Defendants' pre-trial and appeal efforts." To the extent that Defendants further object to admission of "the calendar" of events in this case, Defendants remain free to object at the time of any claimed impermissible testimony.

## J. *Prior Representation of Pottawattamie County by Law Firms and Their Attorneys*

Defendants seek to exclude, as irrelevant or, in the alternative, unduly prejudicial, any references regarding the fact that some of Defendants' attorneys used to represent former Pottawattamie County defendants in this consolidated lawsuit. *See* Clerk's No. 290–1 at 62. Plaintiffs assert in response that such evidence is relevant to proving Plaintiffs' conspiracy claim, and is also important to show the former Pot-

---

**7.** To the extent possible, Defendant shall raise its objection on the record and submit any proposed limiting instruction prior to, rather than during, Plaintiffs' closing arguments.

tawattamie County defendants' bias and prejudice should any of them testify at trial. *See* Clerk's No. 297 at 25.

Although Plaintiffs have not explained how the fact of former representation is probative of their conspiracy claim, the Court agrees that the evidence in question may be relevant as bearing on the credibility of the former Pottawattamie County defendants if they are called as witnesses during trial. *See* Fed.R.Evid. 607. The Court concludes, however, that there is insufficient information at this point to permit a ruling on this Motion. Accordingly, the parties will refrain from mentioning evidence of the prior representation in the presence of the jury without first obtaining leave from the Court.

### K. *Lay Testimony of Medical Conditions, Causation, Diagnosis, or Prognosis*

■ Defendants seek to exclude Plaintiffs' testimony "regarding any purported medical condition (physical or psychological) they may have suffered as a result of [the] allegations in this case...." Clerk's No. 290–1 at 62–63. Defendants' primary concern regarding allowing such testimony is that the jury would treat it as expert testimony. *See id.* Defendants, however, readily concede that Plaintiffs would be allowed to testify as to their "subjective symptoms, like pain or sadness." *See id.* Plaintiffs reply that they should be allowed to testify regarding their medical conditions and further assert that the jury would not treat their testimony as expert opinion because the jury would know that neither Plaintiff is a medical doctor. *See* Clerk's No. 297 at 25–26.

The Court concludes that Plaintiffs may testify as to their overall physical and mental conditions caused by their alleged false arrests, prosecutions, and incarcerations without violating Rule 702. Plaintiffs' testimony must not, however, morph into a quasi-expert opinion since neither Har-

rington nor McGhee possesses the requisite "knowledge, skill, experience, training, or education." *See* Fed.R.Evid. 702. The Court is cognizant of Defendants' concern as to the possibility that the jury may assign to Plaintiffs' testimony a considerable weight normally associated with expert opinions, but believes such concern is unfounded as it can readily be neutralized with proper jury instructions. Therefore, the Court denies Defendants' Motion.

### L. *"Code of Silence"*

In this Motion, Defendants seek the exclusion of any "[g]eneralized allegations of a police code of silence" on the basis that such references would be irrelevant or unduly prejudicial. *See* Clerk's No. 290–1 at 63–64. Plaintiffs state that they will not make any generalized references to a code of silence among all police officers. *See* Clerk's No. 297 at 26. Therefore, to the extent that Defendants' Motion concerns generalized references to such code of silence, it is granted.

■ Plaintiffs, however, maintain that they should not be precluded from referring to a code of silence among Defendants. *See* Clerk's No. 297 at 26. The Court agrees with Plaintiffs. Evidence showing that Defendants pledged silence to one another for the purpose of wrongfully convicting Plaintiffs is certainly relevant to the conspiracy claim and would not be unduly prejudicial. Of course, such evidence would be admissible only if Plaintiffs lay proper foundation. Therefore, to the extent that Defendants' Motion can be read to seek the exclusion of references to a code of silence among Defendants, it is denied.

### M. *Exclusion of Non–Party Non–Expert Witnesses from Courtroom*

Defendants seek the exclusion from the courtroom of all non-party non-expert wit-

nesses pursuant to Federal Rule of Evidence 615. *See* Clerk's No. 290–1 at 64. Plaintiffs do not resist the Motion. *See* Clerk's No. 297 at 26. Accordingly, it is granted.

### N. *Evidence of Un-pled Claims or Theories*

Defendants seek to exclude as irrelevant any evidence of un-pled claims or theories, such as negligence, that Plaintiffs may attempt to introduce. *See* Clerk's No. 290–1 at 64–65. Defendants further claim that "Plaintiffs have one remaining independent cause of action—a substantive due process claim" on the basis of the alleged fabrication of evidence. *Id.* at 64. Plaintiffs disagree, noting that "[t]he Eighth Circuit merely knocked out their Fourth Amendment malicious prosecution or prosecution without probable cause claims." *See* Clerk's No. 297 at 26.

The Court notes that it is unclear precisely what evidence Defendants seek to exclude. It appears, however, that they wish to preclude Plaintiffs from introducing all evidence regarding Defendants' alleged negligence in failing to follow other leads and to properly collect and process evidence. Plaintiffs have never alleged mere negligence on the part of Defendants, however. Nor do they appear to intend to do so at trial. *See* Clerk's No. 297 at 27. Plaintiffs' claims have always been based on intentional and reckless, rather than negligent, conduct. *See id.* To the extent that Defendants seek to preclude evidence of their failure to follow other leads or to properly process evidence, the Motion must be denied as those facts may be relevant to whether Defendants violated Plaintiffs' substantive due process rights, and whether they did so with malice. Thus, Defendants' Motion is denied.

### O. *Racially Derogatory Comments by Non–Parties*

 In its February 27, 2007 Order, the Court ruled on precisely the same motion filed by Defendants, stating:

Defendants request an order precluding Plaintiff Curtis McGhee from offering testimony concerning statements allegedly made by unidentified staff members of the Pottawattamie County Jail following his conviction. Specifically, Defendants object to any testimony that staff members purportedly called McGhee a "cop killer," a "nigger," or threatened to have unknown associates "waiting on you [McGhee] when you get to Iowa," on the basis that such testimony is hearsay [and irrelevant as the statements were made by non-parties, or if relevant, the evidence is certainly unduly prejudicial]. Both Plaintiffs counter that such testimony is not hearsay and is relevant to demonstrate the racially biased and derogatory treatment they received as a result of their wrongful incarceration.

The Court agrees with Plaintiffs that the testimony may be relevant to Plaintiffs' damages and that the testimony cannot be barred by the hearsay rule. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." It is clear that Plaintiffs do not seek to offer the statements of the unknown jail staff to demonstrate that he was, in fact and truth, a "cop killer," a "nigger," or that the jail staff would actually have unknown associates "waiting for" McGhee. Accordingly, Defendants' motion is denied.

Case No. 4:05–cv–00255, Clerk's No. 193 at 10–11. The Court reaffirms its prior ruling in this regard.

1208

The Court has also given careful consideration to the fact that the derogatory statements were uttered by Pottawattamie County Jail staff members, and the Pottawattamie County defendants are no longer a party to this lawsuit. *See* Clerk's No. 290–1 at 65. This fact does not render the derogatory statements any less relevant on the issue of damages, however. Defendants allegedly conspired with the Pottawattamie County defendants to put Plaintiffs behind bars, where they allegedly became targets of verbal abuse by some of the jail's employees. Therefore, the challenged evidence can be used against Defendants on the issue of damages, should the jury find them liable. Accordingly, Defendants' Motion is denied.

P. *Officer Larsen's Bad Acts*

Defendants move in limine to exclude evidence regarding an incident, which took place after the events at issue in this case, where officer Larsen allegedly hit "a [teenage driver] in the face as a part of a traffic stop." *See* Clerk's No. 290–1 at 66. In his police report following the incident, Larsen stated that the driver "had banged his head against the squad car to produce his wounds." Clerk's No. 297 at 28. Several officers, however, testified that they had witnessed Larsen beating the driver. *See id.* Defendants claim that this evidence is both irrelevant and improper character evidence in violation of Rule 404(b). *See* Clerk's No. 290–1 at 66. Plaintiffs counter, noting that the evidence is relevant to the issue of Larsen's credibility and would not be introduced for an impermissible purpose. *See* Clerk's No. 297 at 28–29.

The Court concludes that there is insufficient information at this point to make a definitive ruling on this Motion. The challenged evidence may be admissible as it relates to an incident where Larsen lied in his police report following a traffic stop. Such evidence is certainly relevant to his credibility. The Court is, however, aware that the same set of facts may be impermissibly used by Plaintiffs to try and establish Larsen's character "in order to show [that he] act[ed] in conformity therewith" on a particular occasion. *See* Fed. R.Evid. 404(b)(1)("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Thus, Defendants' Motion is preliminarily denied. The parties shall, however, refrain from mentioning such evidence in the presence of the jury without first obtaining leave from the Court.

II. CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine is GRANTED IN PART and DENIED IN PART, consistent with the terms of this Order.

IT IS SO ORDERED